ATTORNEYS FOR APPELLANT
Stephen T. Owens
Public Defender of Indiana

Randy A. Elliott
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Gregory F. Zoeller
Attorney General of Indiana

Richard C. Webster
Deputy Attorney General

Andrew A. Kobe
Deputy Attorney General
Indianapolis, Indiana



# In the
# Indiana Supreme Court

No. 49S04-1207-PC-431

JUAN M. GARRETT,

*Appellant (Petitioner below),*

v.

STATE OF INDIANA,

*Appellee (Respondent below).*

Appeal from the Marion Superior Court, Criminal Division, Room 1
No. 49G01-0706-PC-120521
The Honorable Steven J. Rubick, Magistrate
The Honorable Kurt M. Eisgruber, Judge

On Petition To Transfer from the Indiana Court of Appeals, No. 49A04-1107-PC-410

**August 28, 2013**

**Rucker, Justice.**

We hold that the "actual evidence" test announced in <u>Richardson v. State</u>, 717 N.E.2d 32 (Ind. 1999) is applicable to cases in which there has been an acquittal on one charge and retrial on another charge after a hung jury. We conclude however that the post-conviction court properly denied the petitioner's claim that counsel rendered ineffective assistance in failing to pursue this issue at trial or on direct appeal.

## Facts and Procedural History

### *Factual Background*

This case arises out of an abduction and sexual assault and resulted in two successive trials. The underlying facts are recited in the Court of Appeals memorandum decision on direct appeal as follows:

> Early in the morning of June 9, 2007, A.W. reported to the police that three men forced her into a van, took her to an apartment, and forced her to submit to multiple acts of oral sex and vaginal intercourse. One of the perpetrators gave her a piece of paper with the name "Juan" and a phone number written on it. He told her "to call him again if [she] wanted to have a good time again." A.W. showed an officer the location of the apartment where she had been raped.
>
> Police discovered the phone number and apartment belonged to Garrett. On June 25, 2007, Garrett went to the Sex Crimes Office and was interviewed by Detective Linda White and Sergeant Craig McCartt. Detective White gave Garrett <u>Miranda</u> warnings, which Garrett said he understood. She then read him an advice of rights form, which he said he understood and signed.
>
> Garrett told the officers he had called off work on the evening of June 8 because he was sick, but he then went to the Embassy Suites for off-track betting. He claimed he returned home around 9:00 and went straight to bed. He denied that anyone was at his apartment that evening. When confronted with the note, Garrett said, "I meet a lot of people on the bus downtown. I have no idea from there." Detective White asked Garrett if he would give a buccal swab, but Garrett refused.
>
> Garrett's DNA was later obtained by court order, and his DNA matched a sample from A.W.'s rape examination. Detective White showed A.W. a photographic array, and A.W. identified Garrett as one of the perpetrators.

On June 27, 2007, Garrett was charged with Count 1, Class A felony rape (alleging he raped A.W. while armed with a knife); Count 2, Class A felony rape (also alleging he raped A.W. while armed with a knife); Count 3, Class B felony criminal deviate conduct; Count 4, Class B felony criminal confinement (alleging he confined A.W. in an apartment while armed with a knife); and Count 5, Class C felony criminal confinement (alleging he forced A.W. into a vehicle).

Garrett v. State, No. 49A02-0807-CR-609, slip op. at 2-3, 2009 WL 485203, at *1 (Ind. Ct. App. Feb. 25, 2009) (citations and footnotes omitted), trans. denied.

*First Trial*

Garrett's case was first tried to a jury on April 14, 2008. In addition to the foregoing facts, following are additional facts of what occurred at the first trial. During the course of her testimony, A.W. testified that her clothes were forcefully removed and that all three men forced her to perform oral sex. When asked "what happened next" A.W. testified as follows:

A. The older one made me get up, and he bent me over the bed and stuck his penis in my vagina.

Q. Okay. And you said he bent you over the bed. He was behind you?

A. Yes.

Q. Okay. And he put his penis in your vagina?

A. Yes.

Tr. 1 at 51-52.[1] A.W. further testified that after the man was done he told her to put her clothes back on and that she could leave. Id. at 56. However, one of the younger men prevented her from leaving, pushed her back over the couch and raped her. Id. at 56-57. Thereafter, according to A.W. "the older man made me have sex with him again." Id. at 58. The following exchange then occurred:

[1] Although the transcripts from trials one and two are presented to us consecutively paginated, for clarity we refer to the transcript from the first trial as "Tr. 1" and the transcript from the second trial as "Tr. 2."

3

Q. Okay. When you said the older man made you have sex with you [sic] again, where were you when that happened?

A. I was on the bed.

Q. Back where the first one happened?

A. Yes.

*       *       *

Q. Okay. After that happened, what did he say?

A. He told me I could put my clothes back on and leave.

Q. And did you do it?

A. I put my clothes on and I got to the door. He wrote his phone number down and told me to call him if I wanted to have a good time again.

Id. at 58-59. When asked if she saw one of the men in the courtroom who raped her A.W. identified one of the spectators who appeared to have been exchanging hand signals with the defendant during the course of trial. See id. at 76-77. After a recess, A.W. identified Garrett as the older man who raped her. See id. at 80.

The jury returned verdicts of not guilty on Count 1 (Class A felony rape), Count 3 (Class B felony criminal deviate conduct), and Count 5 (Class C felony criminal confinement). The jury was unable to reach a verdict on Count 2 (Class A felony rape) and Count 4 (Class B felony confinement). The trial court discharged the jury, declared the jury deadlocked on Counts 2 and 4, and scheduled a pretrial hearing for the following week, April 23, 2008. The record is not altogether clear on what transpired at the pretrial hearing. In any event, retrial on Counts 2 and 4 was scheduled for June 5, 2008. Garrett waived his right to trial by jury, and the case proceeded to a bench trial.

*Second Trial*

Prior to commencement of retrial the following colloquy between the trial court and the deputy prosecutor occurred:

> The Court:     Okay.  We're on the calendar for a Court trial.  The trial is not scheduled to begin until 10:00 o'clock a.m. but [Deputy Prosecutor], you said you had some preliminary matter you wanted the Court to hear?
>
> [Deputy Prosecutor]:  I do, Your Honor.  Just to clarify for the record before we get started and I call [A.W.] to testify in this matter.  One of [sic] the Court's guidance with regard to the direct testimony she's going to be giving today, as the Court's aware, we tried this case to a jury on April 14th of 2008, the jury found Mr. Garrett not guilty on [Count] 1 . . .  and we are here to retry [Count] 2.  . . .  My question for the Court is with regard to [C]ounts 1 and 2 which are both rape as class A felonies.  The jury found Mr. Garrett not guilty on one count and hung on the other.
>
> The Court:     Not guilty on one.
>
> [Deputy Prosecutor]:  And hung on the other.
>
> The Court:     And hung on 2.
>
> [Deputy Prosecutor]:  Right.
>
> The Court:     So what's your question?
>
> [Deputy Prosecutor]:  My question is, Your Honor —
>
> The Court:     What's the difference between 1 and 2?
>
> [Deputy Prosecutor]:  None.   They're identical.   Identical as charged and all of these incidents occurred one night.  So I wanted the Court's guidance on which incident I should question about.
>
> The Court:     Whatever incident you alleged constituted [C]ount 2 . . . .
>
> [Deputy Prosecutor]:  That's correct.

5

Tr. 2 at 347-49. Retrial proceeded, and as its first witness the State called A.W. to the stand. A.W. testified that on the evening of June 8, 2007, she ended up in an apartment with three men she did not know. Id. at 358. One man was older, and two were younger. Id. at 358-59. After they entered the apartment, one of the men locked the door. Id. at 359. She did not want to be there and begged them to let her go because she had a sick child at home and needed to take care of him. Id. at 361. The men refused, and said they were "going to do things to" her, and she feared they were going to hurt or kill her. Id. The apartment was a one-room studio containing a bed and couch. Id. at 359. One of the men pushed her onto the couch, and the two younger men sat down beside her. Id. at 359-60. The older man sat down on the bed. The men started drinking and smoking marijuana. She did not want to drink, but they forced her to do so. Id. at 360. After awhile, the men pulled her clothes off. A.W. was forced onto the bed:

> Q. How did you get over to the bed?
>
> A. I was pulled over to the bed and pushed down on the bed.
>
> Q. When you were pushed down on the bed, were you on your back or on your stomach?
>
> A. I was on — I believe on my back.
>
>         \*        \*        \*
>
> Q. All right. When you were pushed down onto the mattress, what man were you with?
>
> A. The older one.
>
> Q. When the older man pushed you down on the mattress, what happened?
>
> A. He stuck his penis inside of me and had sex with me.
>
> Q. When you say he stuck his penis inside of you, what part of you?
>
> A. In my vagina.

Tr. 2 at 363-64. A.W. asked him to stop, but he did not. While the older man was having sex with her, A.W. noticed a knife at the end of the bed. Id. at 364-65. When the older man

6

finished, he told her she could get dressed and leave. Id. at 366. However, one of the younger men prevented her from leaving. Id. at 367. A.W. then testified that she was eventually allowed to leave "after he [the older man] put his penis in me again." Id. As A.W. was leaving, the older man gave her his telephone number, and she also took the knife when he was not paying attention. Id. at 368. A.W. identified Garrett as the older man who had raped her. Id. at 377.

A.W. ran to a gas station down the street and called 911. A.W. gave the police the note and the knife and showed them where the apartment was located. She was then taken to a hospital for an examination. The nurse testified A.W. "was tearful, upset, she was cooperative with me, but very uncomfortable, having some pain, rated I believe a 9 out of 10." Id. at 392. A.W.'s injuries included a chipped tooth, a hemorrhage in her eye, and bruises on several parts of her body. Id. at 393-96. Over Garrett's objection the State also introduced into evidence Garrett's statement to police concerning the events allegedly occurring in the late evening and early morning hours of June 8 and 9, 2007. Id. at 423-25.

The trial court found Garrett guilty of rape as a Class B felony, because A.W. testified she had not seen anyone touch the knife. The trial court found Garrett not guilty of criminal confinement, because A.W. testified one of the other men had prevented her from leaving after Garrett had sex with her. The trial court sentenced Garrett to fifteen years imprisonment with five years suspended to probation accompanied by lifetime registration as a sex offender.

*Appellate History*

Garrett appealed challenging the admissibility of his statements to the police and the sufficiency of the evidence. In an unpublished memorandum decision the Court of Appeals affirmed the judgment of the trial court. See Garrett, No. 49A02-0807-CR-609. Thereafter on June 16, 2009 Garrett filed a pro se petition for post-conviction relief that was amended by counsel on January 28, 2010. As amended the petition essentially alleged that Garrett was denied the effective assistance of trial counsel because, prior to retrial, counsel failed to object and/or move for a dismissal of the rape charge on federal and state double jeopardy grounds. The petition also alleged that appellate counsel rendered ineffective assistance for failing to raise the double jeopardy issues on direct appeal.

7

After an evidentiary hearing, the post-conviction court denied Garrett's petition for relief. Garrett appealed raising the same claims he raised before the post-conviction court. The Court of Appeals rejected Garrett's federal double jeopardy claim. As for Garrett's state double jeopardy claim the Court of Appeals concluded "the actual evidence test [a component of this State's double jeopardy analysis] does not apply to this case." Garrett v. State, 965 N.E.2d 115, 122 (Ind. Ct. App. 2012). Instead, applying the doctrine of collateral estoppel the Court of Appeals affirmed the judgment of the post-conviction court. Having previously granted transfer, thereby vacating the opinion of the Court of Appeals, see Appellate Rule 58(A), we address Garrett's Indiana double jeopardy claim. We summarily affirm the Court of Appeals' disposition of Garrett's federal claim. Additional facts are set forth below.

## Standard of Review for Post-Conviction Proceedings

Post-conviction proceedings do not provide criminal defendants with a "super-appeal." State v. Hollin, 970 N.E.2d 147, 150 (Ind. 2012). Rather, they provide a narrow remedy to raise issues that were not known at the time of the original trial or were unavailable on direct appeal. Id. "Issues available but not raised on direct appeal are waived . . . ." Wilkes v. State, 984 N.E.2d 1236, 1240 (Ind. 2013) (internal quotation omitted). Further, the petitioner in a post-conviction proceeding bears the burden of establishing grounds for relief by a preponderance of the evidence. Ind. Post-Conviction Rule 1(5); Fisher v. State, 810 N.E.2d 674, 679 (Ind. 2004). "When appealing from the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment." Fisher, 810 N.E.2d at 679. To prevail from the denial of post-conviction relief, a petitioner must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. Weatherford v. State, 619 N.E.2d 915, 917 (Ind. 1993).

## Standard of Review for Ineffective Assistance of Trial Counsel

To establish a post-conviction claim alleging violation of the Sixth Amendment right to effective assistance of counsel, a defendant must establish the two components set forth in Strickland v. Washington, 466 U.S. 668 (1984). See Williams v. Taylor, 529 U.S. 362, 390

8

(2000). "First, a defendant must show that counsel's performance was deficient." Strickland, 466 U.S. at 687. This requires a showing that counsel's representation fell below an objective standard of reasonableness and that counsel made errors so serious that counsel was not functioning as "counsel" guaranteed to the defendant by the Sixth Amendment. Id. "Second, a defendant must show that the deficient performance prejudiced the defense." Id. This requires a showing that counsel's errors were so serious as to deprive the defendant of a fair trial, meaning a trial whose result is reliable. Id. To establish prejudice, a defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome. Id.

**Standard of Review for Ineffective Assistance of Appellate Counsel**

The standard of review for appellate counsel is the same as for trial counsel in that the defendant must show appellate counsel was deficient in his or her performance and that the deficiency resulted in prejudice. Bieghler v. State, 690 N.E.2d 188, 192-93 (Ind. 1997). To satisfy the first prong, the defendant must show deficient performance: representation that fell below an objective standard of reasonableness, committing errors so serious that the defendant did not have the "counsel" guaranteed by the Sixth Amendment. McCary v. State, 761 N.E.2d 389, 392 (Ind. 2002). To satisfy the second prong, the defendant must show prejudice: a reasonable probability (i.e.[,] a probability sufficient to undermine confidence in the outcome) that, but for counsel's errors, the result of the proceeding would have been different. Id.

**Discussion**

**I.**

**Applicability of Actual Evidence Test**

Garrett contends he was twice prosecuted for the same offense and thus his conviction violates the Double Jeopardy Clause of the Indiana Constitution which provides "[n]o person shall be put in jeopardy twice for the same offense." Ind. Const. art. 1, § 14. In Richardson v. State, 717 N.E.2d 32 (Ind. 1999) this Court concluded that two or more offenses are the same

9

offense in violation of article 1, section 14 if, with respect to either the statutory elements of the challenged crimes or the actual evidence used to obtain convictions, the essential elements of one challenged offense also establish the essential elements of another challenged offense. Under the actual evidence test, we examine the actual evidence presented at trial in order to determine whether each challenged offense was established by separate and distinct facts. Id. at 53. To find a double jeopardy violation under this test, we must conclude that there is "a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense." Id. The actual evidence test is applied to all the elements of both offenses. "In other words . . . the Indiana Double Jeopardy Clause is not violated when the evidentiary facts establishing the essential elements of one offense also establish only one or even several, but not all, of the essential elements of a second offense." Spivey v. State, 761 N.E.2d 831, 833 (Ind. 2002).

Our precedents "instruct that a 'reasonable possibility' that the jury used the same facts to reach two convictions requires substantially more than a logical possibility." Lee v. State, 892 N.E.2d 1231, 1236 (Ind. 2008) (citing cases). The reasonable possibility standard "fairly implements the protections of the Indiana Double Jeopardy Clause and also permits convictions for multiple offenses committed in a protracted criminal episode when the case is prosecuted in a manner that insures that multiple guilty verdicts are not based on the same evidentiary facts." Richardson, 717 N.E.2d at 53 n.46. The existence of a "'reasonable possibility' turns on a practical assessment of whether the [fact finder] may have latched on to exactly the same facts for both convictions." Lee, 892 N.E.2d at 1236. We evaluate the evidence from the jury's perspective and may consider the charging information, jury instructions, and arguments of counsel. Id. at 1234.

As recounted earlier the Court of Appeals declined to address Garrett's Richardson double-jeopardy claim on grounds that the "actual evidence test does not apply to this case." Garrett, 965 N.E.2d at 122. In support the court relied on Buggs v. State, 844 N.E.2d 195 (Ind. Ct. App. 2006), trans. denied. In that case defendant Buggs was charged with murder and felony murder based on a single death. The jury acquitted Buggs of felony murder but could not reach a

verdict on the murder charge. On retrial for murder Buggs was convicted. He appealed arguing among other things that his retrial violated Indiana's prohibition on double jeopardy because the felony murder and murder charges were the same offense and violated the actual evidence test. Declining to address this issue, the Court of Appeals noted that neither party cited to any case in which an Indiana appellate court had applied the actual evidence test in cases where there is an acquittal on one charge and retrial on another charge after a hung jury. The Court then noted "[i]n fact, our Supreme Court has made no indication that the actual evidence test is even used to determine whether two offenses are the same offense when there is an acquittal on one offense and retrial on another offense. Perhaps this is because there is already a recognized doctrine that applies to this situation, namely, collateral estoppel. Because of the availability of the doctrine of collateral estoppel, we choose not to extend the Richardson actual evidence test to this situation." Buggs, 844 N.E.2d at 201-02.

We make two observations. First, this Court has not heretofore been presented with, and thus has not had the opportunity to address, the precise question facing us today. Indeed as the Court of Appeals observed most double jeopardy claims and most Indiana reported decisions arise from defendants challenging two convictions, not retrial after an acquittal. See id. at 201 n.5. This does not mean however that Indiana Double Jeopardy analysis is inapplicable to assess whether two offenses are the same offense when there is an acquittal on one offense and retrial on another offense. Second, we are not persuaded that the availability of the doctrine of collateral estoppel forecloses applying Indiana Double Jeopardy analysis. The doctrine of collateral estoppel (also referred to as issue preclusion) is not the same as double jeopardy, "but rather is embodied within the protection against double jeopardy." Coleman v. State, 946 N.E.2d 1160, 1165 (Ind. 2011). "[T]he traditional bar of jeopardy prohibits the prosecution of the crime itself, whereas collateral estoppel, in a more modest fashion, simply forbids the government from relitigating certain facts in order to establish the fact of the crime." Id. (internal quotation omitted). Essentially the doctrine of collateral estoppel "precludes the Government from relitigating any issue that was necessarily decided by a jury's acquittal in a prior trial." Id. (quoting Yeager v. United States, 557 U.S. 110, 119 (2009)).

In this case the Court of Appeals applied the doctrine of collateral estoppel and concluded it "did not bar relitigation of the second count of rape." Garrett, 965 N.E.2d at 123. But see Richardson, 717 N.E.2d at 68 n.23 (Boehm, J., concurring in result) (noting that the doctrine of collateral estoppel is of limited practical value "particularly if the first result is an acquittal, [because] the basis of the jury's ruling is often unascertainable"). Left unresolved is the question of whether Indiana Double Jeopardy is applicable to the facts before us. We answer this question in the affirmative.

First, "[t]he Double Jeopardy clause is assurance that the State will not be allowed to make *repeated attempts to convict* an accused for the same offense." Thompson v. State, 290 N.E.2d 724, 726 (Ind. 1972) (citing U.S. Const. amend. V and XIV; Ind. Const. art. 1, § 14; Benton v. Md., 395 U.S. 784, 796 (1969); Green v. United States, 355 U.S. 184, 187 (1957)) (emphasis in original). Indeed, as we have recognized, the idea underlying the Double Jeopardy Clause's prohibition against multiple prosecutions "is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby . . . enhancing the possibility that even though innocent he may be found guilty." State v. Monticello Developers, Inc., 527 N.E.2d 1111, 1112 (Ind. 1988) (quoting Green, 355 U.S. at 187-88). Having had one full opportunity to convict an accused, the State should not receive a "second bite at the apple." See Burks v. United States, 437 U.S. 1, 17 (1978).

Second, "[t]he notion that 'jeopardy' is 'risk' is the very core of double jeopardy jurisprudence." Bryant v. State, 660 N.E.2d 290, 299 (Ind. 1995) (citing Breed v. Jones, 421 U.S. 519, 528 (1975)). Jeopardy is the risk of trial and conviction, not punishment. Id. (citing Price v. Ga., 398 U.S. 323, 326 (1970)). In other words, double jeopardy protection prohibits twice subjecting an accused to the risk that he will be convicted of a single crime. Therefore it is not surprising that we have previously recognized a double jeopardy violation where a defendant demonstrated "that he might have been acquitted or convicted on the former trial" of the same crime for which he was convicted at the second trial. Brinkman v. State, 57 Ind. 76, 79 (1877). Finally, we see no reason why the Richardson actual evidence test would not apply any time there are multiple verdicts, not simply multiple convictions, on the same facts. In fact, the plain

12

language of the test refers not just to convictions: "[A] defendant must demonstrate a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one *offense* may also have been used to establish the essential elements of a second challenged *offense*." Richardson, 717 N.E.2d at 53 (emphasis added).

## II.

### Double Jeopardy Violation

In the first trial the State charged Garrett with two separate, but identically worded, counts of rape. The charges read as follows:

Count I

On or about June 9, 2007, Juan Garrett did knowingly have sexual intercourse with [A.W.], a member of the opposite sex, when [A.W.] was compelled by force or the imminent threat of force, and further said act was committed while armed with a deadly weapon, that is: a knife;

Count II

On or about June 9, 2007, Juan Garrett did knowingly have sexual intercourse with [A.W.], a member of the opposite sex, when [A.W.] was compelled by force or the imminent threat of force, and further said act was committed while armed with a deadly weapon, that is: a knife[.]

Appellant's Direct Appeal App. at 28. At trial, evidence was presented of two separate incidents of rape, one of which preceded the other. For clarity, we will sometimes refer to the first-in-time alleged rape as "Rape A" and the second-in-time alleged rape as "Rape B." Garrett contends (and the State does not contest) that neither the charging informations nor the parties' evidence and argument at trial specifically linked either charged count with a particular rape event, Rape A or Rape B. In the first trial, the jury acquitted Garrett on Count I but was unable to reach a unanimous verdict on Count II.[2] Garrett was then retried on Count II.

---

[2] The foreman informed the court that the jury was "virtually split seven to five." Tr. 1 at 334.

Garrett contends that because the State never linked the Counts to the individual rape events in the first trial, it is impossible to know whether the jury's decision with respect to Count I acquitted him of Rape A or Rape B. The State counters it is reasonable to infer that Count I charged Rape A — the first-in-time alleged offense, and Count II charged Rape B — the second-in-time alleged offense. This is so, according to the State, because (1) both counts were Class A felonies that occurred in chronological order, (2) this is how counsel for both parties understood the charges, (3) A.W.'s testimony presented the allegations in that order, and (4) the deputy prosecutor referred to the alleged rapes in that order in closing argument. We agree with the State on this point: the record supports the conclusion that the jury found Garret not guilty of alleged Rape A — the first-in-time offense; but could not reach a unanimous verdict on alleged Rape B. Thus there was no procedural bar in conducting a retrial on alleged Rape B — the second-in-time offense. The question remains whether the evidence presented at retrial resulted in a double jeopardy violation based on the Richardson actual evidence test.

We pause here to note the record reflects that the evidence of Rape B — the second in-time alleged offense — was actually more extensive in the first trial than on retrial. The only evidence presented on retrial of Rape B was A.W.'s testimony that after the older man told her she could leave, one of the younger men prevented her from leaving; but she was eventually allowed to leave "after he [the older man] put his penis in me again." Tr. 2 at 367. This is the sum total of the evidence presented on retrial concerning Count II — the second-in-time alleged offense and the very count that all parties agreed was at stake on retrial. In any event even if the converse were true it would make no difference in this case. That is to say even if all parties agreed that Garrett was actually acquitted of alleged Rape B, the second-in-time offense, and thus retrial was confined to alleged Rape A, the first-in-time offense, the fact remains that essentially the same evidence was presented at both trials.

Under our traditional formulation, in order to find a double-jeopardy violation pursuant to the Richardson actual evidence test, we must conclude there is "a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense." Richardson, 717 N.E.2d at 53. As slightly modified, we hold today that a double jeopardy

violation under the Richardson actual evidence test may also rest on our conclusion that there is a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of the offense for which the defendant was acquitted may also have been used to establish all of the essential elements of the offense for which the defendant was convicted.

We acknowledge that in a different factual context this modified test may prove challenging in its application. But here the facts are fairly straightforward. In essence on retrial the State presented the same evidence of Rape A — the first-in-time rape — on which the State relied in the first trial and upon which the jury found Garrett not guilty. And given the relative paucity of evidence on retrial concerning Rape B — the second-in-time rape — we conclude there is reasonable possibility that the evidentiary facts used by the jury in the first trial to establish the essential elements of Rape, for which Garrett was acquitted, may also have been used on retrial to establish all of the essential elements of Rape for which Garrett was convicted.[3] We conclude therefore that Garrett was twice prosecuted for the same offense in violation of article 1, section 14 of the Indiana Constitution.

## III.

### Ineffective Assistance of Counsel

Garrett contends that trial counsel rendered ineffective assistance because prior to retrial counsel failed to file a motion to dismiss or otherwise object to the rape charge on State double jeopardy grounds. He also contends appellate counsel rendered ineffective assistance for failing to raise the double jeopardy issue on direct appeal.

---

[3] Justice Massa's separate opinion invokes what is commonly referred to as the "judicial-temperance presumption," under which "[w]e generally presume that in a proceeding tried to the bench a court renders its decision solely on the basis of relevant and probative evidence." Konopasek v. State, 946 N.E.2d 23, 28 (Ind. 2011) (quoting Coleman v. State, 558 N.E.2d 1059, 1062 (Ind. 1990)). In this case that presumption has been rebutted because of the ambiguity on the question of whether the State presented probative evidence that Garrett committed the second-in-time alleged rape. The question under Richardson is whether there is a "reasonable possibility" that the facts the trial judge relied on to convict Garrett were the same facts the jury relied on in its acquittal. See Richardson, 717 N.E.2d at 53. If we were to accept Justice Massa's position, then that would mean there could never be a Richardson violation where the second trial after an acquittal is before the bench rather than a jury. In our view this goes beyond "judicial temperance" and borders on judicial infallibility. It is "reasonab[ly] possible" that even an experienced trial judge can make a mistake. That is not to say that a mistake was in fact made in this case; but there is a reasonable possibility that is so. This is all Richardson requires.

With respect to trial counsel, in order to prevail on a claim of ineffective assistance due to the failure to object, the defendant must show a reasonable probability that the objection would have been sustained if made. Wrinkles v. State, 749 N.E.2d 1179, 1192 (Ind. 2001). Similarly, the defendant must show a reasonable probability that the motion to dismiss would have been granted if made. Here, as we earlier declared, there was no procedural bar in conducting a retrial on the second-in-time alleged rape. The record supported the conclusion that the jury found Garrett not guilty of alleged Rape A — the first-in-time alleged offense; but could not reach a unanimous verdict on alleged Rape B — the second-in-time alleged offense. Hence there was nothing to prevent retrial on this charge. As we have attempted to demonstrate, the double jeopardy violation occurred as a result of the evidence presented during retrial. Garrett cannot demonstrate that trial counsel would have prevailed had he objected to retrial or moved to dismiss.

As for appellate counsel, ineffective assistance claims "generally fall into three basic categories: (1) denial of access to an appeal, (2) waiver of issues, and (3) failure to present issues well." Reed v. State, 856 N.E.2d 1189, 1195 (Ind. 2006). Here, Garrett's claim is based upon the waiver of issues category. To show that counsel was ineffective for failing to raise an issue on appeal thus resulting in waiver for collateral review, "the defendant must overcome the strongest presumption of adequate assistance, and judicial scrutiny is highly deferential." Ben-Yisrayl v. State, 738 N.E.2d 253, 260-61 (Ind. 2000). To evaluate the performance prong when counsel waived issues upon appeal, we apply the following test: (1) whether the unraised issues are significant and obvious from the face of the record and (2) whether the unraised issues are "clearly stronger" than the raised issues. Timberlake v. State, 753 N.E.2d 591, 605-06 (Ind. 2001). If the analysis under this test demonstrates deficient performance, then we evaluate the prejudice prong which requires an examination of whether "the issues which . . . appellate counsel failed to raise would have been clearly more likely to result in reversal or an order for a new trial." Bieghler, 690 N.E.2d at 194 (quotation omitted).

Assuming for the sake of argument that Garrett's unraised double jeopardy claim was significant and obvious from the face of the record, this issue was not "clearly stronger" than the issues counsel raised on direct appeal.

16

On direct appeal pointing to several ambiguities and inconsistencies in A.W.'s testimony, Garrett challenged the sufficiency of the evidence. He also contended the trial court erred in admitting into evidence a statement he gave police arguing he had invoked his right to counsel, and thus the statement was obtained in violation of Miranda. The Court of Appeals rejected both claims. In his petition for post-conviction relief, with the exception of his double jeopardy claim, Garrett did not allege there were any other viable issues that appellate counsel could have raised but did not. With respect to the double jeopardy issue, just three years before Garrett initiated his direct appeal, the Court of Appeals had rejected an argument that the Richardson actual evidence test applied in cases where there is an acquittal on one charge and retrial on another charge. See Buggs, 844 N.E.2d at 201-02. The Court was unequivocal: "[W]e choose not to extend the Richardson actual evidence test to this situation." Id. at 202. Not only was Garrett's double jeopardy claim not "clearly stronger" than the issues counsel raised on direct appeal, but also because of then-existing case authority it was "clearly weaker." Further, this conclusion is not altered by the fact that today this Court has changed existing law, and modified the Richardson actual evidence test to make it applicable to instances where there has been an acquittal on one charge and retrial on another. As we have declared on more than one occasion "appellate counsel cannot be held ineffective for failing to anticipate or effectuate a change in existing law." Reed, 856 N.E.2d at 1197 (citing Fisher, 810 N.E.2d at 679); see also Trueblood v. State, 715 N.E.2d 1242, 1258 (Ind. 1999). In sum, the post-conviction court did not err in denying Garrett's petition for relief.

## Conclusion

Garrett has failed to show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. Therefore we affirm the post-conviction court's judgment.

Dickson, C.J., and David and Rush, JJ., conur.
Massa, J., concurs in result.

17

**Massa, Justice, concurring in result.**

I agree that, for reasons clearly stated in Part III of the Court's opinion, the post-conviction court properly denied Garrett's ineffectiveness claim; thus, I concur in result. I do not, however, share my colleagues' belief that "there is a reasonable possibility that the evidentiary facts used by the jury in the first trial to establish the essential elements of Rape, for which Garrett was acquitted, may also have been used on retrial," and therefore I cannot join the Court's conclusion "that Garrett was twice prosecuted for the same offense in violation of Article 1, Section 14 of the Indiana Constitution." Slip op. at 15.

As the Court notes, Garrett was retried to the bench, not to a jury. The record is clear that, in this second trial, the trial court, prosecution, and defense all understood that the two separate rapes were charged in chronological order and that Garrett was being retried for the alleged "Rape B" only. Slip op. at 14. This does not mean that the victim had to confine her testimony in the second trial solely to Rape B, omitting all details of what transpired earlier in the evening; our jurisprudence does not require such a stilted, redacted and devoid-of-context presentation. (How, for instance, could she testify she was raped "again" without mentioning the first rape?) We trust trial judges to separate wheat from chaff, permitting them, for instance, to render a verdict even after being exposed to inadmissible evidence that would irreparably taint a lay jury. See Birdsong v. State, 685 N.E.2d 42, 47 (Ind. 1997) ("when a trial is before a bench and not a jury, we generally presume that the trial judge considers only relevant and probative evidence in reaching its decision . . . Unless the defendant presents evidence to the contrary, we presume no prejudice." (citing Coleman v. State, 558 N.E.2d 1059, 1062 (Ind. 1990))); see also Misenheimer v. State, 268 Ind. 274, 280, 374 N.E.2d 523, 528 (1978) ("It can be presumed that a trial judge is not swayed by evidence which is considered prejudicial before a jury . . . [and] that he disregarded inadmissible evidence.").

I am confident that the experienced trial judge in this case performed just such a threshing here. Although the judge heard a fuller account of the victim's terrible ordeal, I presume—as our precedent requires I presume, where, as here, there is no evidence to the contrary—that she deliberated only on the evidence supporting Rape B. Thus, the defendant was

not "put in jeopardy twice for the same offense" as we have interpreted that language from our Indiana Constitution in <u>Richardson</u> and its evolving progeny.