## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 07 2015, 10:01 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Jeffry G. Price
Peru, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Monika Prekopa Talbot
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Jon Jerricco Haupert,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

April 7, 2015

Court of Appeals Case No. 85A02-1407-CR-510

Appeal from the Wabash Superior Court.

The Honorable Christopher M. Goff, Judge

Cause No. 85D01-1402-FD-124

**Riley, Judge.**

## STATEMENT OF THE CASE

Appellant-Defendant, Jon Jerricco Haupert (Haupert), appeals his conviction of strangulation, a Class D felony, Ind. Code § 35-42-2-9(b) (2013); and battery resulting in bodily injury, a Class A misdemeanor, I.C. § 35-42-2-1(a)(1)(A) (2013).

We affirm but remand with instructions to correct a clerical irregularity.

## ISSUES

Haupert raises two issues on appeal, which we restate as follows:

(1) Whether Haupert's conviction of both a Class D felony strangulation and a Class A misdemeanor battery violate his constitutional right against double jeopardy; and

(2) Whether the trial court properly enhanced Haupert's sentence rather than imposing a separate, consecutive sentence for his adjudication as a habitual offender.

## FACTS AND PROCEDURAL HISTORY

Towards the end of January 2014, Haupert was arrested and incarcerated in the Wabash County Jail on charges unrelated to the current proceedings. He was housed in Cell Block C-1, which consists of seven cells and a common area known as the "Day Room." (Tr. p. 26). The Day Room contains a television and tables and is primarily used for the inmates to congregate during the day.

Because the cells in Cell Block C-1 could accommodate only fourteen inmates, there were a few additional bunk beds in the Day Room in the event of overcrowding. At that time, fifteen inmates were assigned to Cell Block C-1. The jail's policy requires that all of the cell spaces must be filled before the Day Room beds may be utilized at night. Thus, only one inmate in Cell Block C-1—Charles D. Smith (Smith)—had been sleeping in a Day Room bunk.

[5] On February 2, 2014, shortly before 10:00 p.m., Haupert informed Smith that he wanted to sleep in the Day Room, so Smith would need to relocate to a cell. Smith refused, explaining that he had "been there the longest" and "had no plans to take a cell that night." (Tr. p. 27). Haupert threatened that they could "figure this out the easy way or the hard way[,]" but Smith was not persuaded. (Tr. p. 83). Angered by Smith's resistance, Haupert went into his cell and changed from his personal gray sweatpants into a blue pair that had been issued by the jail. According to Haupert, "blood don't show up as easy on the, uh, dark blue" and "if I was gonna ruin something it would have been State issue where it didn't cost me." (Tr. p. 84). Haupert then went into the cell directly across from Smith's bunk because he was aware that this particular cell was in "a blind spot" of the jail's surveillance cameras. (Tr. p. 86). He "taunt[ed] [Smith] to come in there" with the intent to "physically assault him." (Tr. pp. 79, 81).

[6] Smith, however, continued reading on his bunk, so Haupert rushed out of the cell and lunged at him. When Smith dodged to avoid being punched, Haupert grabbed him around the neck and yanked him off the bunk. With Smith

secured in a headlock, Haupert dragged him toward the cell, but Smith grabbed onto the cell's bars in an effort to avoid being pulled all the way in. Haupert tightened his grip on the headlock, inhibiting Smith's ability to breathe, and also administered several blows to Smith's rib cage with his knee. Smith managed to break free and ran across the Day Room to push the emergency button to summon a correctional officer.

[7] Assistant Jail Commander Duane Coburn responded and escorted Smith out of Cell Block C-1. He contacted the Wabash County Sheriff's Department, and Deputy Eric Ryggs (Deputy Ryggs) arrived to investigate. Deputy Ryggs first reviewed the surveillance footage and observed that Smith was "holding his left side" following the altercation. (Tr. p. 67). Deputy Ryggs subsequently met with Smith for an interview, at which point Smith "was still holding his left side and appeared to be in a lot of pain." (Tr. p. 67). Deputy Ryggs took photographs of the red marks left on Smith's neck as a result of the headlock.

[8] On February 19, 2014, the State filed an Information, charging Haupert with Count I, strangulation, a Class D felony; and Count II, battery resulting in bodily injury, a Class A misdemeanor. On March 6, 2014, the State filed an Information alleging Haupert to be a habitual offender.

[9] On June 11, 2014, the trial court conducted a bifurcated jury trial. At the close of the evidence, the jury returned a guilty verdict on both Counts. Thereafter, Haupert pled guilty to the habitual offender charge. The trial court entered a judgment of conviction on Counts I and II and adjudicated Haupert as a

habitual offender. On July 7, 2014, the trial court held a sentencing hearing. On Count I, strangulation, the trial court imposed an executed sentence of five years, which included a three-year enhancement for the habitual offender adjudication. As to Count II, battery, the trial court ordered a concurrent one-year sentence.

[10] Haupert now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Double Jeopardy*

[11] Haupert claims that his conviction of both strangulation and battery violates his constitutional right to be free from double jeopardy. The Double Jeopardy Clause of the Indiana Constitution provides that "[n]o person shall be put in jeopardy twice for the same offense." IND. CONST. art. 1, § 14. The Indiana Supreme Court has determined that, for purposes of double jeopardy, two offenses are the same offense if, "with respect to *either* the statutory elements of the challenged crimes or the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense." *Richardson v. State*, 717 N.E.2d 32, 49 (Ind. 1999). On appeal, our court reviews *de novo* whether a defendant's conviction violates the Double Jeopardy Clause. *Goldsberry v. State*, 821 N.E.2d 447, 458 (Ind. Ct. App. 2005).

[12] In order to convict Haupert of strangulation, a Class D felony, the State had to establish that he,

in a rude, angry, or insolent manner, knowingly or intentionally:
(1) applie[d] pressure to the throat or neck of another person; or
(2) obstruct[ed] the nose or mouth of . . . another person;
in a manner that impedes the normal breathing or the blood
circulation of the other person.

[13] I.C. § 35-42-2-9(b) (2013). On the other hand, proving that Haupert committed battery resulting in bodily injury, a Class A misdemeanor, required the State to demonstrate that he "knowingly or intentionally touche[d] another person in a rude, insolent, or angry manner," which "result[ed] in bodily injury to any other person." I.C. § 35-42-2-1(a)(1)(A) (2013). The crimes of strangulation and battery resulting in bodily injury "each contain an element not shared by the other." *Lee v. State*, 892 N.E.2d 1231, 1233 (Ind. 2008). Thus, Haupert does not challenge his conviction under the statutory elements test; rather, he asserts that his conviction violates the "actual evidence test." *See id.* at 1233-34.

[14] Applying the actual evidence test, "we examine the actual evidence presented at trial in order to determine whether each challenged offense was established by separate and distinct facts." *Garrett v. State*, 992 N.E.2d 710, 719 (Ind. 2013). We will find a double jeopardy violation only if there is "a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense." *Id.* There is no double jeopardy violation if "the evidentiary facts establishing the essential elements of one offense also establish only one or even several, but not all, of the essential elements of a second offense." *Id.* (quoting *Spivey v. State*, 761 N.E.2d 831, 833 (Ind. 2002)). A "reasonable possibility" determination "turns on a practical

assessment of whether the [fact finder] may have latched on to exactly the same facts for both convictions." *Id.* (alteration in original) (quoting *Lee*, 892 N.E.2d at 1236). Our court must review "the evidence from the jury's perspective and may consider the charging information, jury instructions, and arguments of counsel." *Id.*

[15] Haupert argues that the charging Information and jury instructions "simply quoted" the statutory language, and that the language defining the crimes of strangulation and battery are "almost identical." (Appellant's Br. p. 8). Haupert further asserts that the evidence supports a finding of battery resulting in bodily injury, but there is insufficient evidence to prove that he strangled Smith. As such, he posits that the jury improperly relied on the evidence that establishes battery to also convict him of strangulation. We initially note that Haupert's argument of insufficient evidence based on Smith's references to the conduct as a "headlock" rather than a "strangle" is nothing more than a request to reweigh evidence, which we decline to do. (Appellant's Br. pp. 8-9). Furthermore, we disagree with Haupert's actual evidence analysis for two reasons.

[16] First, we acknowledge that Haupert is correct that the charging Information and the jury instructions do not explicitly distinguish that the headlock is the basis for the strangulation charge and that the rib injury is the basis for the battery charge. Instead, the Information and instructions clarify that the crime of strangulation requires proof that Haupert applied pressure to Smith's throat or neck in a manner that impeded his normal breathing, whereas the crime of

battery requires proof that Haupert touched Smith in a rude, insolent, or angry manner resulting in bodily injury. Here, the jury was presented with distinct evidence to independently support both offenses. By grabbing Smith in a headlock and applying pressure to his throat, whereby Smith was unable to breathe, Haupert completed the crime of strangulation. Beyond that, he committed battery by using his right knee to repeatedly strike the left side of Smith's rib cage, resulting in "pain for a month and a half afterwards." (Tr. p. 31).

[17] We are unpersuaded by Haupert's contention that there is a reasonable possibility that the jury construed the headlock as the rude, insolent, or angry touching necessary to support a battery conviction. The jury was instructed to "consider all the instructions together." (Appellant's App. p. 131). Relating to the battery charge, the jury instruction defined "bodily injury" as "any impairment of physical condition, including physical pain." (Appellant's App. p. 136). Here, the bulk of the evidence demonstrating any type of "bodily injury" concentrated on the kneeing of Smith's ribs and the amount of pain it caused. (Appellant's App. p. 136). Deputy Ryggs testified that he observed Smith clutching his left side in the surveillance footage—which the jury also reviewed—as well as during the interview following the incident. Smith testified that the level of pain to his ribs, "[o]n a scale from 1 to 10, I would say it was a 7, right after it happened, 10 being I'm ready to die." (Tr. p. 31). Accordingly, in finding Haupert guilty of battery, we find it likely that the jury relied on the distinct fact that Smith sustained bodily injury as a result of being

kneed in the ribs, notwithstanding the headlock. *See Goldsberry*, 821 N.E.2d at 459 ("The appellant must show more than a remote or speculative possibility that the same facts were used.").

[18] Second, in its closing argument, the State summarized that "Mr. Haupert intended everything that you saw in that video. Everything he did to Mr. Smith. He was angry. He grabbed him. He kneed him. He strangled him. He cut off his airway." (Tr. pp. 91-92). Although the State did not specify which evidence should be used to find Haupert guilty of each offense, it emphasized that Haupert committed several distinct acts in the course of the skirmish. Moreover, in the defense's closing argument, Haupert's counsel specifically identified "the evidence that was distinct to each crime." *Lee*, 892 N.E.2d at 1237. In particular, the defense clarified for the jury that

> the legislature sets up the elements of the crime of Battery. And that's what they define Battery is. A rude or insolent touching causing injury. Causing pain. You saw the knee in the ribs. I certainly think that would hurt. Mr. Smith told ya it hurt and that seems logical. . . . Now he also used words like, well, my air was cut off when I grabbed the bar or he didn't really know when his air was cut off. Now he also says he panicked, you know. . . . But in order to convict Mr. Haupert of Strangulation you need to be convinced that it wasn't panic. . . . It was the fact that Mr. Haupert cut off, applied pressure and cut off his airflow. . . . Now, strangulation is, for someone to intend to strangle another person, I mean, that's . . . above and beyond one to hit or strike. Strangulation is a much more intimate form of violence.

(Tr. p. 94). As a practical matter, taking into consideration the charging Information, the jury instructions, the closing arguments, and the evidence itself, we do not find a "reasonable possibility" that the jury relied on the same

evidentiary facts to establish the essential elements of both strangulation and battery. *Garrett*, 992 N.E.2d at 719. Therefore, Haupert's conviction does not violate the Indiana Double Jeopardy Clause.

## II. *Habitual Offender Enhancement*

[19]   Haupert also claims that "the language used by the trial court in the enhanced sentence is contrary to that required by applicable case law." (Appellant's Br. p. 10). In the Abstract of Judgment, the trial court indicated that Haupert was sentenced to three years for the habitual offender adjudication, which was to be served "consecutive" to his two-year sentence under Count I. (Appellant's App. p. 10). According to Haupert, the trial court erred by imposing consecutive sentences instead of simply noting that Haupert had received a five-year enhanced sentence for his conviction of Class D felony strangulation. (Appellant's Br. p. 11).[1]

[20]   Our supreme court has previously established that the imposition of "a separate consecutive sentence" for a habitual offender adjudication "is an irregularity" because a "habitual offender conviction allows enhancement of a sentence for a substantive offense, not a separate sentence." *Hazzard v. State*, 642 N.E.2d 1368, 1371 (Ind. 1994) (citing *Armstead v. State*, 538 N.E.2d 943, 944 (Ind. 1989)). In the present case, the trial court indicated during the sentencing

---

[1] Having determined that Haupert's conviction of Class D felony strangulation will not be vacated because there is no double jeopardy violation, we need not address Haupert's assertion that "there is no predicate for the habitual offender enhancement." (Appellant's Br. p. 10).

hearing that it would be imposing a consecutive sentence for the habitual offender adjudication, but the State reminded the court that it is considered "an enhanced sentence that is an additional fixed term" rather than "a consecutive sentence." (Tr. p. 131). As a result, in its Sentencing Order, the trial court "enhanced [Haupert's] sentence, as to [Count] I, by an additional [three] years imprisonment for a total sentence, as to [Count] I, of [five] years with none suspended." (Appellant's App. p. 12). It is therefore clear that the trial court ordered a properly enhanced sentence. However, we must remand with instructions for the trial court to correct the Abstract of Judgment to reflect that the habitual offender adjudication merits an enhancement to the sentence on Count I rather than a separate, consecutive sentence.

## CONCLUSION

[21] Based on the foregoing, we conclude that Haupert's conviction of strangulation, a Class D felony, and battery resulting in bodily injury, a Class A misdemeanor, does not violate Indiana's Double Jeopardy Clause. We further conclude that the trial court imposed a properly enhanced sentence on Count I but erroneously indicated in the Abstract of Judgment that the enhancement was a separate, consecutive sentence.

[22] Affirmed but remanded with instructions to correct a clerical irregularity.

[23] Vaidik, C. J. and Baker, J. concur