## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



<blockquote>
FILED
Nov 05 2015, 8:01 am
CLERK
of the supreme court,
court of appeals and
tax court
</blockquote>

ATTORNEYS FOR APPELLANT

Jennifer M. Lukemeyer
Tyler D. Helmond
Voyles Zahn & Paul
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Jesse R. Drum
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Roy Morgan,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

November 5, 2015

Court of Appeals Case No.
49A02-1409-CR-654

Appeal from the Marion Superior Court.
The Honorable Shatrese Flowers, Judge.
Cause No. 49F09-1205-FD-33565

**Darden, Senior Judge**

## Statement of the Case

[1] Roy Morgan appeals his conviction of intimidation, a Class D felony. Ind. Code § 35-45-2-1 (2006). We affirm.

## Issue

Morgan presents one issue for our review, which we restate as: whether Morgan's second trial on the charge of intimidation was barred by Indiana's Double Jeopardy Clause.

## Facts and Procedural History

The facts most favorable to the verdict are as follows. On May 7, 2012, Morgan's wife, Angela, placed a $1,000.00 deposit on a car at Auto Pass car dealership in Indianapolis. The deposit was non-refundable and was to hold the car for forty-eight to seventy-two hours. Auto Pass gave Angela a receipt stating that deposits are non-refundable. When Auto Pass receives a deposit on a car, the car is locked, a sold tag is placed on the car, and the car is not available for sale or opened for anyone until the person who placed the deposit comes back to pick up the car. In this case, Auto Pass held the car for Morgan and his wife for almost two weeks.

On May 19, 2012, Morgan and Angela went to Auto Pass' office where they asked Randy Pulliam, owner and president of Auto Pass, for the key to the car upon which they had paid the deposit. The Morgans went out to the lot, started up the car, and then returned to the office and told Pulliam they no longer wanted the car. In addition, Morgan requested the return of his full deposit. Initially, Pulliam refused to return the deposit money. As the discussion between the two men ensued, Pulliam offered to return half the deposit money to Morgan. However, Morgan was not satisfied with Pulliam's offer, and the

discussion between the two men became heated. Pulliam told Morgan to leave, but he refused and became louder and angrier. Morgan made several threats to Pulliam, causing Barry Teague, Auto Pass Finance Manager, to call 911. The police arrived, and, after speaking with everyone involved, they arrested Morgan. Based upon this incident, Morgan was charged with intimidation, as a Class D felony, and criminal confinement, as a Class D felony.[1]

[5] On November 20, 2013, a jury trial was held on both charges. The jury found Morgan not guilty as to the charge of criminal confinement and was unable to reach a verdict on the charge of intimidation. A second jury trial was held on the charge of intimidation on May 28, 2014. At that trial, the jury found Morgan guilty. The trial court imposed a sentence of 730 days with 550 days to be served on home detention with GPS monitoring, and 180 days suspended to probation. Morgan now appeals his conviction of intimidation.

## Discussion and Decision

[6] Morgan challenges his conviction of intimidation on Indiana's double jeopardy principles. Particularly, he argues that the jury relied upon the same evidence in finding him guilty of intimidation in his second trial as it did in acquitting him of criminal confinement in his first trial.

---

[1] Ind. Code § 35-42-3-3 (2006).

The Double Jeopardy Clause of the Indiana Constitution provides that "[n]o person shall be put in jeopardy twice for the same offense." IND. CONST. art. I, § 14. Two or more offenses are the same offense in violation of article I, section 14 if, with respect to either the statutory elements of the challenged crimes or the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense. *Richardson v. State*, 717 N.E.2d 32, 49 (Ind. 1999). In the present case, Morgan claims a violation of the Indiana Double Jeopardy Clause under the actual evidence test only.

With regard to the actual evidence test, upon review, we examine the actual evidence presented at trial in order to determine whether each challenged offense was established by separate and distinct facts. *Id.* at 53. To show that two challenged offenses constitute the same offense under the actual evidence test, a defendant must demonstrate a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second offense. *Id.* A "reasonable possibility" requires "substantially more than a logical possibility" and involves a practical assessment of whether the fact-finder "may have latched on to exactly the same facts for both convictions." *Lee v. State*, 892 N.E.2d 1231, 1236 (Ind. 2008). Further, the Indiana Double Jeopardy Clause is not violated when the evidentiary facts establishing the essential elements of one offense also establish only one, or even several, but not all, of the essential elements of a second offense. *Spivey v. State*, 761 N.E.2d 831, 833 (Ind. 2002).

In applying the actual evidence test, we evaluate the evidence from the fact-finder's perspective, and we may consider the charging information, jury instructions, and arguments of counsel. *Newgent v. State*, 897 N.E.2d 520, 525 (Ind. Ct. App. 2008).

[9]     Moreover, particularly relevant to the instant case, our Supreme Court, in *Garrett v. State*, 992 N.E.2d 710 (Ind. 2013), held that the actual evidence test may be applicable to cases in which there has been an acquittal on one charge and retrial on another charge after a hung jury. *Id.* at 714. Thus, a double jeopardy violation may occur under the actual evidence test when there is a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of the offense for which the defendant was acquitted may also have been used to establish the essential elements of the offense for which the defendant was convicted. *Id.* at 723.

### *First Trial*

[10]    In addition to the foregoing facts, the following are further evidentiary facts of what occurred at the first trial. At Morgan's first trial on November 20, 2013, he was tried on both the charge of criminal confinement and the charge of intimidation. As to these charges, the jury was instructed as follows:

> The [crime of] criminal confinement is defined by law as follows:
>
> A person who knowingly confines another person without the other person's consent commits criminal confinement, a Class D felony.
>
> Before you may convict the defendant, the State must have proved each of the following beyond a reasonable doubt:

> 1. The Defendant, Roy Morgan;
>
> 2. Knowingly;
>
> 3. Confined Randy Pulliam without his consent.

Appellant's App. p. 137.

> The crime of intimidation is defined by statute as follows:
>
> A person who communicates a threat to another person, with the intent the other person be placed in fear of retaliation for a prior lawful act commits intimidation, a Class A misdemeanor. The offense is a Class D felony if the threat is to commit a forcible felony.
>
> Before you may convict the defendant of intimidation, a Class D felony as charged in Count II of the information, the State must have proved each of the following elements beyond a reasonable doubt:
>
> > 1. The Defendant, Roy Morgan;
> >
> > 2. Communicated a threat to Randy Pulliam;
> >
> > 3. With the intent that Randy Pulliam be placed in fear of retaliation for a prior lawful act;
> >
> > 4. And the threat was to commit a forcible felony.

*Id.* at 138.

[11]     The State presented evidence at the first trial that once Pulliam refused to return Morgan's full deposit, Morgan yelled at Pulliam, "You will never sell cars again. I'[ll] make sure of it. You don't know who you're messin' with." Tr. 1 p. 52.[2] Morgan then stated, "The next [time] you see me, I'll be in your livin'

---

[2] Because this case involves two trials, on appeal we have been given two separate trial transcripts. For clarity, we will cite to the transcripts as "Tr. 1" for Morgan's first trial and "Tr. 2" for Morgan's second trial.

room with a gun over your head." *Id.* Pulliam also testified that Morgan's threats were laced with profanity. When Morgan made these threats, he stood near the doorway of the office while Pulliam was behind his desk several feet away. Pulliam testified that he felt trapped and unsure of whether Morgan would let him leave. Pulliam was asked if Morgan had his consent to trap him in his office, and Pulliam replied, "No, not at all." *Id.* at 54. Several people asked Morgan to leave the premises, but he refused. The jury also viewed Auto Pass' security videotape showing Morgan half leaning/half sitting on the small table near the door during his heated exchange with Pulliam. There was no audio to the video. Pulliam additionally testified to certain changes that had been made to the office after this incident, including switching the office around so that the employees can see the door and selling his rural, secluded personal residence and moving into the city.

[12] Auto Pass Finance Manager, Barry Teague, testified that Morgan was standing at the edge of the table right in front of the door having a heated conversation with Pulliam. Teague stated that he was concerned for Pulliam's safety because there was nowhere for him to go. He called 911. He then placed a second 911 call after Morgan told Pulliam, "You don't know who you're f***ing with. Call the f***ing police." *Id.* at 108-09. Morgan further stated to Pulliam, "The next time you see me, I'm gonna be standing in your room – in your house – standing over the top of you in your living room with a gun in my hand." *Id.* at 109. The 911 calls were played at trial, and Teague identified Morgan in the background of the second 911 call saying, "You don't know who you're f***ing

with." *Id.* at 114. Auto Pass Sales Manager Zach Walton testified to hearing Morgan's statements to Pulliam as well.

[13] Further, to prove that Morgan committed the offense of confinement in the first trial, the State relied on and summarized in its closing argument the evidence of the security video showing Morgan leaning on a table and lingering by the door of the office. The State reiterated Pulliam's testimony that he was too scared of what Morgan would do if he tried to leave the office and that Pulliam did not consent to being confined. The evidence is undisputed that there were several of Pulliam's co-workers in the office at the time of this incident. There was no evidence that Pulliam expressed a desire to leave the office or that Morgan threatened Pulliam if he attempted to leave. Following the presentation of evidence, the jury found Morgan not guilty as to the charge of criminal confinement and was unable to reach a verdict on the charge of intimidation.

## *Second Trial*

[14] On May 28, 2014, Morgan was tried a second time on the charge of intimidation. Besides the facts as stated above in the Facts and Procedural History section of this opinion, the following are additional facts of what transpired at the second trial. The jury was instructed as follows:

> In this case, the State of Indiana has charged the Defendant with intimidation, a Class D felony. The charge reads as follows:
>
> On or about May 19, 2012, in Marion County, State of Indiana, the following named Defendant, Roy Morgan, did communicate a threat to Randy Pulliam, another person, said threat being

"You don't know who you are f[   ]ing with, next time you see me, I'll be standing in your living room over your head with a gun," with the intent that the other person be placed in fear of retaliation for a prior lawful act, to wit:  not refunding a down payment on a vehicle that was non-refundable; and further that said threat was to commit a forcible felony, to wit:  murder.

Appellant's App. p. 69.

The crime of intimidation is defined by statute as follows:

A person who communicates a threat to another person, with the intent the other person be placed in fear of retaliation for a prior lawful act commits intimidation, a Class A misdemeanor.  The offense is a Class D felony if the threat is to commit a forcible felony.

Before you may convict the Defendant of intimidation, a Class D felony as charged in the information, the State must have proved each of the following elements beyond a reasonable doubt:

> 1. The Defendant, Roy Morgan;
>
> 2. Communicated a threat to Randy Pulliam;
>
> 3. With the intent that Randy Pulliam be placed in fear of retaliation for a prior lawful act;
>
> 4. And the threat was to commit a forcible felony.

*Id.* at 70.

[15] Retrial on the lone charge of intimidation proceeded, and the State presented evidence that after placing a deposit of $1,000.00 on a car and having the car held for almost two weeks, Morgan and his wife went to Auto Pass and requested the full return of their deposit money.  Pulliam testified that when he refused to return Morgan's full deposit, Morgan became upset and boisterous out on the car lot.  Pulliam returned to the office.  Morgan followed Pulliam

inside and began yelling at Pulliam, "You don't know who you're f***ing with." Tr. 2 p. 47. Pulliam described Morgan as "irate" and appearing as if "he was gettin' ready to hit me." *Id.* Morgan was asked to leave several times, but he refused and instead sat near the door to the office. Morgan continued to yell and make statements like, "You're never gonna sell cars in this city. I'll make sure of it." *Id.* at 49. Pulliam testified that Morgan yelled, "The next time you see me, I'll be standin' in your livin' room with a [   ] gun over your head." *Id.* at 50. When asked if this statement was in regard to him not returning Morgan's $1,000.00 deposit, Pulliam replied affirmatively. The jury also viewed Auto Pass' security video showing Morgan and Pulliam's positions in the office of Auto Pass. Although there was no audio, the State questioned Pulliam as follows:

> State:       But during the video, was the defendant threatening you?
>
> Pulliam:    A hundred percent, yes.
>
> State:       And was he yelling with a loud voice?
>
> Pulliam:    Yes.
>
> State:       I also notice that you're pacing around quite a bit in that video. Why is that?
>
> Pulliam:    Um, well, I was scared probably and nervous and didn't know what was gonna happen.

*Id.* at 53-54. Pulliam also testified that as a result of this incident they have added more security cameras at Auto Pass as well as full-time armed security. In addition, they have rearranged the desks in the office to face the front door;

have instituted a buddy system so that no employee is at the office alone; and Pulliam has moved from his secluded, rural home to the city.

[16] Teague also testified at Morgan's second trial. He became aware of Morgan's presence in the office when he heard loud voices and yelling. He testified that Morgan was demanding his money back and said to Pulliam, "You don't know who you're f***ing with. [ ] you're gonna give me my money. You don't know who I am." *Id.* at 95. At that point, Teague called 911. When Teague ended the 911 call, Morgan was becoming more irate, using more profanity, and refusing to leave. Teague testified that he placed a second 911 call because Morgan pointed to Pulliam and said, "The next time you see me, I'm gonna be in your living room with a gun. I'm gonna kill you." *Id.* at 99. Audio tapes of the two 911 calls were played at trial, and Teague identified Morgan as the voice in the background of the second of the two calls saying, "Do not f*** around with me." *Id.* at 109.

[17] Walton testified at the second trial as well. He described a heated argument between Pulliam and Morgan in the office, where Morgan refused to leave despite having been asked several times. He affirmed that Morgan made threats to Pulliam by stating, "You don't know me. You don't know who you're f'ing with," and "The next time you see me, I'll be in your living room standing over you with a gun." *Id.* at 133, 135.

[18] Finally, in its closing argument the State specified which evidence should be used to find Morgan guilty of intimidation. It emphasized that Morgan

communicated a threat to commit a forcible felony to Pulliam by stating that Pulliam didn't know who he was f***ing with and that the next time Pulliam saw him, Morgan would be standing in Pulliam's living room with a gun to Pulliam's head. This threat was made by Morgan with the intent that Pulliam be placed in fear of retaliation for refusing to return Morgan's $1,000.00 deposit. The jury found Morgan guilty of intimidation.

[19] Morgan seeks support for his argument from our Supreme Court's decision in *Garrett*; however, *Garrett* presents a very different factual context than the one before us today. The State charged Garrett with two separate but identically worded counts of rape. At Garrett's first trial, evidence was presented of two separate incidents of rape, but neither the charging information nor the parties' evidence and argument at trial specifically linked either charged count with a particular rape event. The jury acquitted Garrett on Count I but was unable to reach a verdict on Count II. Garrett was retried on Count II, and the State presented the same evidence of Count I upon which it relied in the first trial and upon which the jury found Garrett not guilty. With regard to Count II, the State presented such a paucity of evidence that our Supreme Court concluded there was a reasonable possibility that the evidentiary facts used by the jury in the first trial to establish the essential elements of rape in Count I, of which Garrett was found not guilty, may also have been used on retrial to establish all of the essential elements of rape in Count II, of which Garrett was found guilty, thereby constituting a double jeopardy violation.

In deciding *Garrett*, our Supreme Court acknowledged the unique character of the case by stating that "in a different factual context this modified test may prove challenging in its application." 992 N.E.2d at 723. Contrary to the facts in *Garrett*, here we have the charging information and evidentiary presentation of two distinct and separate offenses. This fact, in and of itself, distinguishes the present case from *Garrett*. Additionally, Morgan points to cases involving a double jeopardy question where there are charges of both robbery and confinement in a single trial. These cases are likewise inapplicable to the analysis of the present case which involves charges of confinement and intimidation, not robbery, and two separate trials.

Therefore, taking into consideration the charging information, the jury instructions, the evidence, and the closing arguments, we find the possibility to be speculative that the jury in Morgan's first trial used the same evidence to acquit him of criminal confinement as did the jury in his second trial to convict him of intimidation. Thus, Morgan's conviction of intimidation does not violate the Indiana Double Jeopardy Clause.

## Conclusion

For the reasons stated, we conclude that Morgan's second trial on the charge of intimidation, following his acquittal of the charge of criminal confinement in his first trial, was not barred by Indiana's Double Jeopardy Clause.

Affirmed.

Kirsch, J., and Pyle, J., concur.