## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 07 2017, 6:26 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT PRO SE

James Orlando Washington
Michigan City, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Justin F. Roebel
Supervising Deputy Attorney
General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

James Orlando Washington,

*Appellant-Petitioner*,

v.

State of Indiana,

*Appellee-Respondent*.

July 7, 2017

Court of Appeals Case No.
45A04-1610-PC-2421

Appeal from the Lake Superior
Court

The Honorable Diane Ross
Boswell, Judge

Trial Court Cause No.
45G03-1404-PC-4

**Brown, Judge.**

[1] James Orlando Washington appeals the denial of his petition for post-conviction relief. Washington raises four issues which we consolidate and restate as whether he was denied the effective assistance of trial counsel and appellate counsel. We affirm.

## Facts and Procedural History

[2] On July 13, 2001, the State charged Washington with: Count I, attempted rape as a class A felony; Count II, rape as a class A felony; Count III, rape as a class A felony; Count IV, criminal confinement as a class B felony; Count V, burglary as a class B felony; and Count VI, robbery as a class B felony. On July 25, 2001, Attorney Charles Graddick filed an appearance on behalf of Washington. On September 21, 2001, Attorney Graddick appeared with Washington and advised the court that he wished to engage in preliminary discussions with the State as to a possible plea, and the court granted a continuance. On February 27, 2004, Attorney Graddick filed a motion to withdraw, and the court later granted the motion.

[3] On March 12, 2004, Attorney David Olson filed his appearance for Washington. On March 19, 2004, Attorney Olson filed a motion for substitution of counsel, the court granted the motion, and Attorney Patrick Young entered his appearance for Washington.

[4] On January 12, 2005, Attorney Lemuel Stigler filed an appearance on behalf of Washington. Following multiple continuances since the time the charges were filed, the court scheduled a jury trial for February 14, 2005. Attorney Stigler

orally moved to continue the February 14, 2005 jury trial and the court rescheduled it to March 14, 2005. On March 11, 2005, Attorney Stigler filed a motion for Rule 4(C) Discharge.[1]

[5] On March 14, 2005, prior to the beginning of the jury trial and after some discussion, the court denied Washington's motion for discharge. The jury found Washington guilty of attempted rape as a class A felony, two counts of rape as class A felonies, criminal confinement as a class B felony, and burglary as a class B felony. The court sentenced Washington to a total executed sentence of 120 years. Washington appealed, and this Court affirmed.

[6] On March 10, 2014, Washington filed a *pro se* petition for post-conviction relief alleging that he was denied the right to a fair trial and the effective assistance of trial counsel and appellate counsel.

[7] On May 8, 2015, the court held a hearing. Attorney Stigler and Washington's appellate counsel, Thomas Vanes, testified. On September 26, 2016, the court denied Washington's petition.

## Discussion

[8] Before discussing Washington's allegations of error, we observe that he is proceeding *pro se*. Such litigants are held to the same standard as trained counsel. *Evans v. State*, 809 N.E.2d 338, 344 (Ind. Ct. App. 2004), *trans. denied*.

---

[1] The record does not contain a copy of this motion.

We also note the general standard under which we review a post-conviction court's denial of a petition for post-conviction relief. The petitioner in a post-conviction proceeding bears the burden of establishing grounds for relief by a preponderance of the evidence. *Fisher v. State*, 810 N.E.2d 674, 679 (Ind. 2004); Ind. Post-Conviction Rule 1(5). When appealing from the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. *Fisher*, 810 N.E.2d at 679. On review, we will not reverse the judgment unless the evidence as a whole unerringly and unmistakably leads to a conclusion opposite that reached by the post-conviction court. *Id.* Further, the post-conviction court in this case entered findings of fact and conclusions thereon in accordance with Indiana Post-Conviction Rule 1(6). "A post-conviction court's findings and judgment will be reversed only upon a showing of clear error—that which leaves us with a definite and firm conviction that a mistake has been made." *Id.* In this review, we accept findings of fact unless clearly erroneous, but we accord no deference to conclusions of law. *Id.* The post-conviction court is the sole judge of the weight of the evidence and the credibility of witnesses. *Id.*

[9] The issue is whether Washington was denied the effective assistance of trial counsel and appellate counsel. He argues that his trial counsel was ineffective for failing to: (A) request a change of venue; (B) conduct a thorough investigation; and (C) communicate a plea offer. He also argues that his appellate counsel was ineffective for failing to raise the issue of a violation of Ind. Criminal Rule 4(C).

[10] Generally, to prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate both that his counsel's performance was deficient and that the petitioner was prejudiced by the deficient performance. *French v. State*, 778 N.E.2d 816, 824 (Ind. 2002) (citing *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984), *reh'g denied*). A counsel's performance is deficient if it falls below an objective standard of reasonableness based on prevailing professional norms. *Id.* To meet the appropriate test for prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Perez v. State*, 748 N.E.2d 853, 854 (Ind. 2001). Failure to satisfy either prong will cause the claim to fail. *French*, 778 N.E.2d at 824. Most ineffective assistance of counsel claims can be resolved by a prejudice inquiry alone. *Id.*

[11] When considering a claim of ineffective assistance of counsel, a "strong presumption arises that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Morgan v. State*, 755 N.E.2d 1070, 1072 (Ind. 2001). "[C]ounsel's performance is presumed effective, and a defendant must offer strong and convincing evidence to overcome this presumption." *Williams v. State*, 771 N.E.2d 70, 73 (Ind. 2002). Evidence of isolated poor strategy, inexperience, or bad tactics will not support a claim of ineffective assistance of counsel. *Clark v. State*, 668 N.E.2d 1206, 1211 (Ind. 1996), *reh'g denied*, *cert. denied*, 520 U.S. 1171, 117 S. Ct. 1438 (1997). "Reasonable strategy is not subject to judicial second

guesses." *Burr v. State*, 492 N.E.2d 306, 309 (Ind. 1986). We "will not lightly speculate as to what may or may not have been an advantageous trial strategy as counsel should be given deference in choosing a trial strategy which, at the time and under the circumstances, seems best." *Whitener v. State*, 696 N.E.2d 40, 42 (Ind. 1998). In order to prevail on a claim of ineffective assistance due to the failure to object, the defendant must show a reasonable probability that the objection would have been sustained if made. *Passwater v. State*, 989 N.E.2d 766, 772 (Ind. 2013) (citing *Wrinkles v. State*, 749 N.E.2d 1179, 1192 (Ind. 2001), *cert. denied*, 535 U.S. 1019, 122 S. Ct. 1610 (2002)).

[12] We apply the same standard of review to claims of ineffective assistance of appellate counsel as we apply to claims of ineffective assistance of trial counsel. *Williams v. State*, 724 N.E.2d 1070, 1078 (Ind. 2000), *reh'g denied*, *cert. denied*, 531 U.S. 1128, 121 S. Ct. 886 (2001). Ineffective assistance of appellate counsel claims fall into three categories: (1) denial of access to an appeal; (2) waiver of issues; and (3) failure to present issues well. *Garrett v. State*, 992 N.E.2d 710, 724 (Ind. 2013). "To show that counsel was ineffective for failing to raise an issue on appeal thus resulting in waiver for collateral review, 'the defendant must overcome the strongest presumption of adequate assistance, and judicial scrutiny is highly deferential.'" *Id.* (quoting *Ben-Yisrayl v. State*, 738 N.E.2d 253, 260-261 (Ind. 2000), *reh'g denied*, *cert. denied*, 534 U.S. 1164, 122 S. Ct. 1178 (2002)). "To evaluate the performance prong when counsel waived issues upon appeal, we apply the following test: (1) whether the unraised issues are significant and obvious from the face of the record and (2) whether the unraised

issues are 'clearly stronger' than the raised issues." *Id.* (quoting *Timberlake v. State*, 753 N.E.2d 591, 605-606 (Ind. 2001), *reh'g denied*, *cert. denied*, 537 U.S. 839, 123 S. Ct. 162 (2002)). "If the analysis under this test demonstrates deficient performance, then we evaluate the prejudice prong which requires an examination of whether 'the issues which . . . appellate counsel failed to raise would have been clearly more likely to result in reversal or an order for a new trial.'" *Id.* (quoting *Bieghler v. State*, 690 N.E.2d 188, 194 (Ind. 1997), *reh'g denied*, *cert. denied*, 525 U.S. 1021, 119 S. Ct. 550 (1998)).

A. *Change of Venue*

[13] Washington argues that his trial counsel was ineffective for failing to request a change of venue due to pretrial publicity. He argues that sixteen of nineteen jurors expressed a belief that he was guilty based on the information provided by news articles. He asserts that the jury pool was tainted because Juror No. 573 was allowed to return to the auditorium where other prospective jurors were waiting to be interviewed. He argues that several prospective jurors, who admitted they had no prior knowledge, returned after a recess for lunch and indicated they had knowledge about the case. He contends that during the examination of Juror No. 624, the prosecutor expressed some concern pertaining to information being spread during the lunch recess. The State contends that Washington has not shown that his counsel was ineffective for not seeking a change of venue because he presented no evidence that venue in Lake County resulted in a biased jury.

[14]     The post-conviction court's order states in part:

> Findings of Fact:
>
> * * * * *
>
> 8.  At the hearing on the petition, Attorney Lemuel Stigler testified that he did not feel that the pre-trial publicity regarding the case was an issue, or that a change of venue was necessary.
>
> * * * * *
>
> Conclusions of Law:
>
> * * * * *
>
> 6.  [Washington] has alleged that counsel was ineffective for failing to seek a change of venue due to pre-trial publicity, and has included in his arguments that the panel was tainted because a juror was permitted to return to the auditorium to remain with the other members of the venire.
>
> 7.  This issue is comparable to alleging counsel ineffective for failure to object.  In order to prove ineffective assistance based upon counsel's failure to object, a petitioner must establish that an objection, if made, would have been sustained.  *Garrett v. State*, 992 N.E.2d 710, 723 (Ind. 2013), citing *Wrinkles v. State*, 749 N.E.2d 1179, 1192 (Ind. 2001).
>
> 8.  To establish court error in the denial of a motion for change of venue based on undue pretrial publicity, a [defendant must demonstrate] (1) prejudicial pretrial publicity and (2) the inability of the jurors to render an impartial verdict.  *Wentz v. State*, 766

N.E.2d 351, 358, (Ind. 2002), citing *Specht v. State*, 734 N.E.2d 239, 241 (Ind. 2000).  In this case, there was prejudicial pretrial publicity.  However, the potential jurors were questioned about their exposure to that publicity, and their ability to reach an impartial verdict in spite of the publicity.  Based upon the answers given by the jurors during voir dire, it is unlikely that a motion for change of venue would have been granted. Additionally, there has been no showing that the jury's verdict was tainted by the publicity.  Juror #573 was permitted to wait in the auditorium with other potential jurors after being admonished by the court not to discuss the publicity with anyone else.  No evidence was presented that established that the court's admonishment was disregarded by the juror, or that Juror 573 tainted any of the other jurors.

9.  Of equal importance, regarding counsel's effectiveness on this issue, Mr. Stigler testified that he did not at the time of either the trial or the post-conviction relief hearing consider the amount of pretrial publicity to be an issue.  Therefore, it was a strategic decision, and one supported by the record.

Appellant's Appendix Volume 2 at 160-163.

[15]    Generally, a defendant is entitled to a change of venue upon a showing that jurors are unable to disregard preconceived notions of guilt and render a verdict based on the evidence.  *State v. Moore*, 678 N.E.2d 1258, 1262 (Ind. 1997), *reh'g denied*, *cert. denied*, 523 U.S. 1079, 118 S. Ct. 1528 (1998).  Disposing of a motion for a change is within the sound discretion of the trial court.  *Id.*  The decision to seek a change of venue is generally a matter of trial strategy that we will not second-guess on collateral attack.  *Id.*  In evaluating claims of ineffective assistance for failure to seek a change of venue, decisions of the

Indiana Supreme Court have found counsel's handling of a case competent where there was insufficient evidence to conclude the defendant could not have received a fair trial in the county in which the case was tried. *Id.* The reasonableness of counsel's decision not to seek a change of venue is assessed based on whether there was such prejudice against the defendant that there is a reasonable probability the motion would have been granted by a trial judge acting according to law. *Id.* "Even where this showing is made, reasonable trial strategy might have dictated keeping the case in the same venue for different reasons, and there no ineffective assistance arises." *Id.* at 1262-1263.

[16] When asked if he was aware that there was a pretrial publicity issue at that particular time, Attorney Stigler answered: "I didn't consider it to be a pretrial publicity issue, so the answer is no." Post-Conviction Transcript at 6. He testified that he did not remember Washington ever asking for a change of venue. He also testified: "With regard to him asking me for a change of venue, if the discussion was had, I didn't feel that there was a need for one." *Id.* at 13. After showing Attorney Stigler certain articles, Washington asked Attorney Stigler if he felt that a change of venue should have been actually asked for at that time, and he answered: "No." *Id.*

[17] Washington cites certain portions of the record to indicate that several prospective jurors admitted to reading about him or seeing news coverage on television and that it would be difficult to separate the evidence from what they had already heard, seen, or read. However, a review of the record reveals that these jurors were excused. To the extent Washington mentions Juror No. 573

and Juror No. 624, we observe that during jury selection, the court told Juror No. 573:

> Now, number 573, ma'am, you are – we are going to send you back to the auditorium for now. I'm instructing you that under no circumstances should you discuss anything that we discussed with you at the bench or anything that you may know or think you know about this case with the jurors that you're going to be seated with.

Trial Transcript at 50. Juror No. 573 replied: "Okay." *Id.*

[18] Later, the court took a recess for lunch, and then stated:

> The jurors thus far have been polled as to any knowledge they may have of this case by way of pre-trial publicity. Those who said this they did have some knowledge of it were brought up to the bench and questioned by the attorneys and by the Court. I believe there was only one who had indicated that she had some prior knowledge of the case that was returned to the jury pool. All the others were excused. That juror was number 573 . . . . All the other potential jurors who indicated that they had some prior knowledge of the case have been excused for cause. I intend to poll the jurors one more time when we bring them in just to make certain that we have a pool that has absolutely no knowledge of the case except for that one juror. She indicated that she felt that she could be fair and impartial in the case.

*Id.* at 124. The court then asked the potential jurors to raise their hands if they thought they had any knowledge of the case by way of any pretrial publicity and two jurors raised their hands. One of the jurors was Juror No. 624 who stated that he reads a lot of newspaper articles, referred to two articles, and

stated that he did not know if they related to the case or not. Juror No. 624 indicated that no one approached him during the break. When asked by Washington's counsel if he could evaluate the evidence presented "as opposed to the newspapers," Juror No. 624 stated:

> I don't take everything for gospel from the newspaper, I believe in the principle, innocent until proven guilty, that's basic fundamental law that I firmly believe in because I know many times the fact that the defendant is in this Court does not in any way indicate he is guilty. That's what I felt all my life, so that's an honest answer to that question.

*Id.* at 130. When asked by the court if the two newspaper articles turned out to have something to do with Washington if that would prejudice him in any way in terms of being able to be fair and impartial, he answered: "None whatsoever." *Id.* Juror No. 620 was the other juror who raised his hand, and he appeared to be removed for cause.[2] We cannot say that Washington has demonstrated that his trial counsel was deficient or that he was prejudiced.[3]

B. *Investigation*

---

[2] The trial court indicated that it was bothered by Juror No. 620's response, Washington's counsel stated in part that "we already know we have a for cause, Judge," the court stated, "I think that's clear," and the prosecutor stated, "I agree." Trial Transcript at 136-137.

[3] At some point, the court reporter was excused and the jury selection process was completed. The post-conviction court concluded that Washington waived the issue of whether his trial counsel failed to record voir dire. Washington does not raise the failure to record voir dire as an issue on appeal.

[19]     Washington argues that his trial counsel failed to conduct a thorough investigation regarding his mental illness, school, medical history, or military service. He alleges that his trial counsel failed to interview any members of his family. He also argues that his trial counsel failed to seek a second professional opinion with respect to the reports generated by DNA Supervisor, Lisa Black. The State argues that Washington's claim fails under the prejudice prong because he did not present any evidence suggesting additional investigation would have supported a defense at trial or reduce his exposure at sentencing.

[20]     The post-conviction court's order found:

> 8. . . . . Mr. Stigler also testified that he did not believe that a DNA expert was necessary because the error made by the State's DNA expert – first referencing the evidence as blood, then semen – did not require expertise to bring to the jury's attention. When questioned about referencing "mental illness" during the sentencing, Mr. Stigler stated that while he did not raise insanity as a defense, that you can have a mitigator like mental illness that does not rise to the level of a defense.

Appellant's Appendix Volume 2 at 161. The post-conviction court concluded:

> 10. [Washington] makes numerous conclusory statements about mental or medical health evidence that could have been presented had Mr. Stigler investigated further. However, even assuming there was evidence to substantiate those claims, nothing suggests that it would have risen to a defense at trial, nor that it would have reduced [Washington's] exposure at sentencing. Also, Mr. Stigler testified that the State's DNA expert's error identified by [Washington] was not one that required a defense expert's testimony to put that before the jury.

As such, Mr. Stigler's decision not to call a DNA expert was a strategic one.

*Id.* at 163-164.

[21] With respect to an expert witness, we observe that Washington asked Attorney Stigler: "Did you at any time feel like an expert witness should have been called on my behalf who could have actually gave us a second opinion about the DNA results considering that a mistake was made the first time?" Post-Conviction Transcript at 14-15. Attorney Stigler answered:

> Mr. Washington, whenever our – I get findings from the Indiana State Lab, whether those findings are DNA or fingerprints or ballistics, I will look over those and I will see if it makes a difference. Now, with respect to your contention that Lisa Black in saying that as you stated earlier that there was blood on the dress that it wasn't blood, that it was semen on the dress, that does not require any – any expert. So if I thought that there was a need for an expert, then I would have asked the chief public defender for the Lake County Public Defender's Office to appoint one and to hire one, and I didn't feel that such was needed.

*Id.* at 15. When asked if he thought it would have been a good idea to actually request a second opinion, Attorney Stigler stated: "Given what you are saying and what I can remember, no." *Id.* at 16. Washington did not present evidence regarding what a second professional opinion would have stated.

[22] With respect to any mental illness, Attorney Stigler testified:

> Was there an – was there a request to have you evaluated for either competency or insanity? No. And I'm not – if the – if we

had the discussion, it would have been my belief that you would have negated it or that you did negate it; and as such, there was no – given that you were competent, it would not have been possible to proceed with an insanity defense.

*Id.* at 18.

[23] Washington did not present any evidence regarding his mental illness, school, medical history, or military service. He did not present evidence with respect to what interviews with members of his family would have revealed. We cannot say that reversal is warranted on these bases.

C. *Communication of Plea*

[24] Washington argues that Attorney Stigler was ineffective because he failed to communicate a plea offer that had been presented when Washington was represented by another defense attorney. The State argues that Washington's statements at the post-conviction hearing appear to contradict his claim on appeal, that he presented no evidence indicating that he was not apprised of negotiations prior to Attorney Stigler filing his appearance, and that he presented no evidence showing that a plea offer of twenty years was offered, available, and would have been accepted by him.

[25] The post-conviction court's order concluded:

11. The final issue of ineffective assistance of trial counsel involves an alleged failure to communicate a plea offer from the State. Although no evidence was presented in this regard, it would appear that an offer of a sentence of twenty (20) years in

exchange for a guilty plea may be been [sic] communicated to Attorney Graddick, who represented [Washington] well before Mr. Stigler was appointed. There was no evidence presented as to whether that offer was actually extended by the State, whether Mr. Graddick did or did not communicate that offer to [Washington], or [Washington's] response. What was presented during questioning of Mr. Stigler was a memo dated the day before the final day of trial, wherein Mr. Stigler notes, "I think you should plead". When questioned about this, Mr. Stigler stated that it was in the midst of trial; things were going badly, and that he was telling [Washington] that he should plead straight up to the charges. [Washington] has failed to sustain his burden of proving that Mr. Stigler failed to communicate a plea offer to him.

Appellant's Appendix Volume 2 at 164.

[26]     When asked if he recalled failing to make Washington aware of an offer of a plea agreement, Attorney Stigler answered: "Mr. Washington, I know how to do my job, and I know that the decision as to whether or not a plea agreement is accepted is my client's, and that is something that I would not do." Post-Conviction Transcript at 24. Attorney Stigler testified that he would have examined the case for the procedural posture so he would have known about the negotiations and that if there had been an offer made and that "it had been rejected which is why the case was still going on and then eventually it gets to me four years later." *Id.* at 29. He also testified: "I would have asked the state is this offer still open; and if the state had said yes, it's open – still open, I would have given Mr. Washington that information." *Id.* On cross-examination,

when asked if he considered plea agreements offered four years prior to still be valid four years later, Attorney Stigler answered:

> If there's nothing in the file that says that it was withdrawn or rejected, then, yes. What I do is to – is to then ask the prosecutor handling the case is this a viable plea; and if I'm told yes, then I'll go to my client. If I'm told no, then it's the next question is is there another offer.

*Id.* at 40-41.

[27] As pointed out by the State, Washington appeared to refer to a conversation he had with Attorney Stigler during his questioning of Attorney Stigler. Specifically, Washington stated: "Well, just based on a conversation that we actually had before trial, I was informed that a 20-year plea was offered, 20 do 10, for a Class A felony of rape, and this information was actually relayed to me by Mr. Stigler." *Id.* at 29. When asked by the court what was his question, Washington stated:

> That was my question. Just to see if he could recollect that that plea was actually offered. Now, during the course of that, Mr. Stigler informed me that the judge wouldn't accept the plea and that wasn't his call to make. It was actually the judge's call to see whether or not a plea would be accepted. So in that instance, I was misinformed.

*Id.* at 30. Attorney Stigler then indicated that he did not recall having a conversation where he indicated that the judge would not accept a plea.

We also observe that other attorneys represented Washington prior to the date Attorney Stigler filed his appearance in 2005 and that Washington did not present testimony from these other attorneys. "Where trial counsel is not presented in support, the post-conviction court may infer that trial counsel would not have corroborated appellant's allegations." *Dickson v. State*, 533 N.E.2d 586, 589 (Ind. 1989). Because Washington did not call his other trial counsel as witnesses at the post-conviction hearing, the court was entitled to infer that they would not have corroborated his allegations. Under the circumstances, we cannot say that reversal is warranted on this basis.

D. *Criminal Rule 4(C)*

Washington argues that his appellate counsel was ineffective for failing to raise the issue of a violation of Ind. Criminal Rule 4(C). He asserts that the 1,340 days between the date he was charged on July 13, 2001, and the date his trial began on March 14, 2005, violated his right to a speedy trial and cites the Sixth Amendment to the United States Constitution and Article 1, Section 12 of the Indiana Constitution.

The State argues Washington has not shown that an appellate claim for discharge under Criminal Rule 4(C) either had a reasonable probability of succeeding or would have been clearly stronger than double jeopardy, sufficiency, and sentencing issues raised. The State argues that Washington is attempting to improperly transform his Criminal Rule 4(C) claim, which was preserved by his trial counsel and presented as a claim of ineffective appellate

counsel in his petition, into a constitutional speedy trial claim. The State also contends that Washington presents no cogent argument or authority showing a violation of Criminal Rule 4(C)'s one-year time limitation.

[31] The post-conviction court's order states:

> 13. Under Ind. R. Crim. P. 4(C) a defendant may not be held to answer a criminal charge for greater than one year unless the delay is caused by the defendant, emergency, or court congestion. However, the Supreme Court has stated, "The defendant's failure to object timely will be deemed acquiescence in the setting of that date." *Vermillion v. State*, 719 N.E.2d 1201, 1204 (Ind. 1999), reh'g denied. "Although a defendant is not obliged under this rule to push the matter to trial, a defendant whose trial is set outside the one-year period must object to the setting at the earliest opportunity or the right to discharge under the rule is waived." *Brown v. State*, 725 N.E.2d 823, 825 (Ind. 2000).

> 14. Prior to jury selection in this case, there was extensive argument about this issue, and the State pointed out instances where the delays were due to a congested docket, or were requested by [Washington]. The State also pointed out that when continuances were requested by the State, there was no objection lodged by the defense. Additionally, the court denied the defense's motion, but granted leave for Mr. Stigler to file a motion to reconsider, which he never did. [Record of the Proceedings, pp. 8 – 13.]

> 15. During the hearing on the petition for post-conviction relief, Mr. Vanes testified that he did not recall coming across a Criminal Rule 4 issue, and did not recall [Washington] mentioning the issue in correspondence. However, the Record of the Proceedings must clearly establish that there was a Criminal

Rule 4 issue, and the record in this case does not do so. In fact, this record suggests that there was not an issue based upon the arguments of the State, and more importantly, based upon the fact that the defense was given an opportunity to further explore the issue and request reconsideration, but did not make that request.

16. Therefore, [Washington] has failed to prove that he received ineffective assistance of either trial or appellate counsel.

Appellant's Appendix Volume 2 at 164-165.

[32]     To the extent Washington attempts to argue that his appellate counsel failed to raise the issue of his speedy trial rights under the Sixth Amendment of the United States Constitution or Article 1, Section 12 of the Indiana Constitution, we observe that the Indiana Supreme Court has stated that:

Although "Indiana Criminal Rule 4 generally implements the constitutional right of a criminal defendant to a speedy trial, thereby establishing time limits and providing for discharge in the event that limits are exceeded," *Bridwell v. State*, 659 N.E.2d 552, 553 (Ind. 1995), our review of Rule 4 challenges is "separate and distinct" from our review of claimed violations of the speedy trial rights secured by the Sixth Amendment of the U.S. Constitution and Article 1, Section 12 of the Indiana Constitution.

*Logan v. State*, 16 N.E.3d 953, 958 (Ind. 2014) (footnote omitted).

[33]     In his petition, Washington alleged that his appellate counsel was ineffective for failing to raise the issue of a Criminal Rule 4(C) violation, but he did not mention his speedy trial rights under the Sixth Amendment of the United States

Constitution or Article 1, Section 12 of the Indiana Constitution. Accordingly, Washington waived this issue. *See Allen v. State*, 749 N.E.2d 1158, 1171 (Ind. 2001) (holding that three claims were unavailable where petitioner did not raise them in his petition or in any of his three amended petitions),[4] *reh'g denied*, *cert. denied*, 535 U.S. 1061, 122 S. Ct. 1925 (2002); Ind. Post-Conviction Rule 1 ("All grounds for relief available to a petitioner under this rule must be raised in his original petition."). Thus, we turn to Ind. Criminal Rule 4(C).

[34] Ind. Criminal Rule 4(C) provides:

> No person shall be held on recognizance or otherwise to answer a criminal charge for a period in aggregate embracing more than one year from the date the criminal charge against such defendant is filed, or from the date of his arrest on such charge, whichever is later; except where a continuance was had on his motion, or the delay was caused by his act, or where there was not sufficient time to try him during such period because of congestion of the court calendar; provided, however, that in the last-mentioned circumstance, the prosecuting attorney shall file a timely motion for continuance as under subdivision (A) of this rule. Provided further, that a trial court may take note of congestion or an emergency without the necessity of a motion, and upon so finding may order a continuance. Any continuance granted due to a congested calendar or emergency shall be reduced to an order, which order shall also set the case for trial

---

[4] The Court noted: "Allen very briefly mentions the first two of these issues in his petition. He makes a brief reference to the third of these issues – which was not mentioned at all in the petition – in his proposed findings of fact and conclusions of law. The first two issues are not mentioned in those proposed findings and conclusions." *Allen*, 749 N.E.2d at 1171 n.17.

within a reasonable time. Any defendant so held shall, on motion, be discharged.

[35] "The rule places an affirmative duty on the State to bring a defendant to trial within one year of being charged or arrested, but allows for extensions of that time for various reasons." *Cook v. State*, 810 N.E.2d 1064, 1065 (Ind. 2004). The determination of whether a particular delay in bringing a defendant to trial violates the speedy trial guarantee depends on the specific circumstances of the case. *Payton v. State*, 905 N.E.2d 508, 511 (Ind. Ct. App. 2009), *trans. denied*.

[36] The only calculation in Washington's brief is the time between the date he was charged and the date on which his trial began. He does not address any impact of the numerous continuances, his failure to object to the rescheduling of the trial date on multiple occasions, or the withdrawal of his trial counsel on the analysis under Rule 4(C). We cannot say that Washington developed a cogent argument, and we conclude that he waived his argument regarding Rule 4(C).

## *Conclusion*

[37] For the foregoing reasons, we affirm the post-conviction court's denial of Washington's petition for post-conviction relief.

[38] Affirmed.

May, J., and Pyle, J., concur.