## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Feb 19 2020, 10:56 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

P. Jeffrey Schlesinger
Merrillville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Tyler G. Banks
Supervising Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

LeVohn Harrison Brown,

*Appellant-Petitioner,*

*v.*

State of Indiana,

*Appellee-Respondent.*

February 19, 2020

Court of Appeals Case No.
19A-PC-2189

Appeal from the Huntington
Circuit Court

The Hon. Davin G. Smith, Judge

Trial Court Cause No.
35C01-1806-PC-6

**Bradford, Chief Judge.**

# Case Summary

[1]     In 2000, LeVohn Brown beat his three-year-old daughter to death, with the specific cause of her death being a skull fracture. Prior to trial, Brown was examined by Dr. Stephen Ross, Psy.D., who concluded that he was not insane when he killed his daughter and was competent to stand trial. Brown was convicted of murder and sentenced to life imprisonment without parole. After Brown's first direct appeal, he was resentenced to life imprisonment without parole, and his conviction and sentence were affirmed following his second direct appeal.

[2]     In September of 2017, Brown filed a petition for post-conviction relief ("PCR"), claiming that he had received ineffective assistance of trial and appellate counsels. Brown argued that his trial counsel had rendered ineffective assistance by failing to emphasize evidence of his mental condition during sentencing. Brown contended that appellate counsel had been ineffective for (1) failing to claim ineffective assistance of trial counsel and (2) failing to challenge the procedure the trial court used when resentencing Brown to life imprisonment without parole. The post-conviction court denied Brown's PCR petition in full. Brown contends that the post-conviction court erroneously denied his PCR petition. Because we disagree, we affirm.

# Facts and Procedural History

[3]     The facts supporting Brown's murder conviction are summarized as follows:

> Throughout the day on Friday, February 4, 2000, LeVohn Brown
> disciplined his three-year-old daughter, MicKenzie, by striking

her repeatedly with a wooden paddle. Blows were administered to the middle of her back, her lower back and her bottom. Brown also struck MicKenzie across the face with his hand and knocked on her head as one would knock on a door. When MicKenzie did not respond in any way to this punishment, Brown became increasingly upset. That evening, when Brown struck MicKenzie on the back of the head with the paddle, she fell to the floor and Brown yelled at her to get up and stop crying. The next day, after another blow, MicKenzie's eyes failed to focus, her left side became numb, and she could neither walk nor control her bodily functions. Brown continued to beat MicKenzie throughout the weekend, but left town on Monday, February 7th. When Brown returned on Thursday, February 10th, the violence resumed. Brown repeatedly struck MicKenzie and let her fall when she was unable to stand. Throughout these events, Brown did not contact anyone regarding MicKenzie's medical condition, but during the investigation told Detective Ron Hoschstetler, from the Huntington City Police Department, that he thought she seemed "fine."

MicKenzie died on Friday, February 11, 2000.

*Brown v. State*, 799 N.E.2d 1064, 1065–66 (Ind. 2003).

[4] On February 14, 2000, the State charged Brown with murder and, on June 7, 2000, filed an information seeking a sentence of life imprisonment without parole because MicKenzie had been younger than twelve when Brown killed her. Brown filed a notice of mental disease or defect. *See* Ind. Code § 35-50-2-9(12).

[5] The trial court then appointed three mental-health experts to examine Brown. One of those experts was Dr. Ross, who, after his examination, filed a twenty-two-page report of his findings ("the Report"), dated June 20, 2000. Regarding the events leading to MicKenzie's death, Brown told Dr. Ross, "I know I could

have handled this better, I just got so angry, I snapped. When I look back, I shouldn't have hit her with the board." Direct Appeal Appellant's App. p. 191. Brown was also asked whether he had any "mental problems" or "psychological difficulties," to which he responded, "No, in my opinion, nothing major going on." Direct Appeal Appellant's App. p. 62.

[6] Dr. Ross also administered psychological testing. During one test called the Structured Interview of Reported Symptoms ("SIRS"), Dr. Ross observed evidence of malingering, specifically that Brown "attempt[ed …] to over-report symptoms." Direct Appeal Appellant's App. p 65. From the SIRS testing data, Dr. Ross concluded that Brown "[was] not endorsing symptoms of extreme psychological disturbances." Direct Appeal Appellant's App. p 65. In another psychological test, Dr. Ross observed "an attempt on [Brown's] part to exaggerate psychological symptoms." Direct Appeal Appellant's App. p 196.

[7] Dr. Ross also administered a Rorschach inkblot test and made the following observations:

> A review of the defendant's valid protocol suggests that he is currently in a state of chronic emotional overload. That is, he feels overwhelmed by feelings of anxiety and pessimism. He is prone to a distortion of reality which may result in difficulties in maintaining an adequate adjustment in some situations for any period of time. Though the defendant reported no symptoms of psychoses or delusions during the clinical interview, the Rorschach suggests the possibility of distorted thinking when under moments of high stress and emotional overload. [….] It is quite possible that the defendant's anger at his daughter became so intense that his having hit her may have been more of a reflexive response than one thoroughly thought out. There

appeared to be little pre-meditation associated with this alleged offense. However, his behavior and lack of appropriate attention to his daughter's medical needs do appear intentional and evidence forethought.

[….]

There was one very important feature of the defendant's Rorschach protocol which needs to be understood by the court. He is prone to emotional overload and feeling overwhelmed by anger and anxiety. It is quite possible that his response to his daughter's statement made to him on the night of the alleged offense was one born out of extreme anger and impulsivity. When under high moments of stress, he may experience very brief moments of distorted reality. However, the defendant's self-presentation during the clinical interview does not suggest that he is currently out of contact with reality.

Direct Appeal Appellant's App. pp. 68–69.

[8] Dr. Ross's report also covered Brown's history in the Air Force, from which Brown had been discharged. The report indicated that the Air Force had found two substantiated charges of spousal abuse and one unsubstantiated child-abuse charge. In his conclusion that Brown was competent to stand trial and not insane when he killed MicKenzie, Dr. Ross opined that "on the date of the alleged offense, [Brown] did not appear to evidence any signs of psychoses, disordered thinking, or impairment in reality testing such that he was not able to appreciate the wrongfulness of the alleged act." Direct Appeal Appellant's App. p. 73.

[9] At trial, Brown's strategy was to admit to hitting his daughter and argue that he should be convicted of the lesser-included offense of reckless homicide. The State addressed this strategy in its rebuttal closing argument:

[Trial Counsel] Swanson again said, this case needs to be reserved for the most heinous of crimes. And that's not the situation for a reckless homicide (inaudible). Well, let's put reckless homicide in perspective. Under the law that's just as serious as driving a vehicle when your license has been suspended for the rest of your life. Under the law, reckless homicide is just as serious as loan-sharking. Under the law, reckless homicide is just as serious as someone who signs another person's name to a check and then tries to cash it. That's how serious reckless homicide (inaudible).

Trial Tr. p. 428. Brown's trial counsel Donald Swanson objected, arguing that the State was impermissibly arguing about penalties in the guilt phase. The trial court overruled the objection, and Swanson did not make a motion for a mistrial or ask for an admonition.

[10] The jury found Brown guilty of murder. In the penalty phase Swanson admitted, *inter alia*, the Report. Swanson encouraged the jury to "carefully review" and take "careful note" of the Report. Trial Tr. p. 489. The jury returned a recommendation for a sentence of life imprisonment without parole.

[11] At the final sentencing hearing, Swanson again offered the Report into evidence. Swanson told the trial court upon tendering the Report that "[i]t was submitted, I believe, at the sentencing phase of the uh, life without parole, but I would like the Court also to consider it here." June 4, 2001, Tr. p. 4. The court responded, "[the Report] was in evidence at the date of the (indecipherable)—15th of March at the second part of the jury trial, and that the Court has seen and has read this on several occasions." June 4, 2001, Tr. p. 4. Swanson argued that Brown "had demonstrated to some degree uh, a mental instability uh, while it falls far short of a legal defense uh, it certainly should be a

consideration in this case." June 4, 2001, Tr. p. 25. Swanson also argued that Brown had "no intent to kill his daughter when that blow uh, that fractured her skull was administered." June 4, 2001, Tr. p. 25. In its order imposing life imprisonment without parole, the trial court found Brown's honorable discharge from the military and lack of criminal history to be mitigating circumstances. The trial court found no other mitigating circumstances and that that the aggravating circumstance of MicKenzie's age "far outweigh[ed] the mitigating circumstances." Direct Appeal Supp. Appellant's App. p. 256.

[12] On direct appeal, Brown argued, and the State conceded, that the correct statutory sentencing factors for imposing a sentence of life imprisonment without parole had not been considered. Consequently, the Indiana Supreme Court ordered a new sentencing. Initially, the trial court issued a first amended sentencing order and imposed a sixty-five-year sentence. When the State objected, the trial court vacated this first amended order and set a new sentencing hearing. After this hearing, the trial court re-imposed a sentence of life imprisonment without parole.

[13] Brown appealed a second time, arguing that the prosecutor had committed fundamental error by comparing reckless homicide to other crimes of the same punishment level. *Brown*, 799 N.E.2d at 1066. The Indiana Supreme Court concluded that, had counsel asked for an admonition, "it would have been appropriate for the trial court to instruct the jury that the prosecutor's comments should be disregarded or that the penalty imposed for crimes may vary widely and the appropriate remedy is a matter for the court, not the jury,

to consider." *Id.* The Indiana Supreme Court ultimately concluded, however, that these improper comments did not rise to the level of fundamental error. *Id.* at 1067–68.

[14] On September 22, 2017, Brown filed a petition for post-conviction relief ("PCR"). In his PCR petition, Brown made allegations of ineffectiveness of both trial and appellate counsels. Brown argued that his trial counsel was ineffective for "failing to present sufficient evidence regarding [his] mental health status of the sentencing hearing." PCR Appellant's App. p. 10. As for appellate counsel, Brown alleged that

> [a]ppellate counsel was ineffective due to failure to raise the issue of ineffective assistance of trial counsel for failing to present available evidence concerning Mr. Brown's mental health at his sentencing hearing. Appellate counsel was also ineffective by failing to address the issue of the trial court's sentencing Mr. Brown to a term of years at his second sentencing hearing and then, following objection by the state, issuing an amended order sentencing Mr. Brown to life incarceration without the opportunity for parole.

PCR Appellant's App. p. 10.

[15] On May 14, 2019, the post-conviction court held an evidentiary hearing on Brown's PCR petition. Swanson testified that he had represented defendants in twenty to twenty-five murder cases before Brown's case. When asked whether the information in the Report could have been used, Swanson responded, "I think it could have been used. Would it have been effective? And my view was it would not have been effective." PCR Tr. Vol. III p. 30. Swanson further added that he did not use the Report as a point of argument because he

"[p]robably didn't feel at the time it would do any good with Judge McIntosh." PCR Tr. Vol. III p. 38. Swanson also testified that he had spoken to Dr. Ross before trial, even though he was not called as a witness.

[16] Appellate counsel Gregory Lewis also testified. Lewis had spent his entire career with the State Public Defender's Office, starting in 1992, and had exclusively done appellate work in that time. When asked how he selected which issue to raise, Lewis responded that he "went with the only thing that [he] felt had a chance of succeeding at some level[,]" *i.e.*, the prosecutorial-misconduct argument. PCR Tr. Vol. III p. 51. On August 26, 2019, the post-conviction court denied Brown's PCR petition in full.

# Discussion and Decision

## *Standard of Review*

[17] Brown contends the post-conviction court erred in denying his PCR petition. Our standard for reviewing the denial of a PCR petition is well-settled:

> In reviewing the judgment of a post-conviction court, appellate courts consider only the evidence and reasonable inferences supporting its judgment. The post-conviction court is the sole judge of the evidence and the credibility of the witnesses. To prevail on appeal from denial of post-conviction relief, the petitioner must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite to that reached by the post-conviction court. […] Only where the evidence is without conflict and leads to but one conclusion, and the post-conviction court has reached the opposite conclusion, will its findings or conclusions be disturbed as being contrary to law.

*Hall v. State*, 849 N.E.2d 466, 468, 469 (Ind. 2006) (internal citations and quotations omitted).

# I. Ineffective Assistance of Trial Counsel

[18]    Brown contends that he received ineffective assistance of trial counsel. We review claims of ineffective assistance of counsel based upon the principles enunciated in *Strickland v. Washington*, 466 U.S. 668 (1984):

> Under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), a claim of ineffective assistance of counsel requires a showing that: (1) counsel's performance was deficient by falling below an objective standard of reasonableness based on prevailing professional norms; and (2) counsel's performance prejudiced the defendant so much that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 687, 694, 104 S. Ct. 2052; *Lowery v. State*, 640 N.E.2d 1031, 1041 (Ind. 1994). […] Failure to satisfy either prong will cause the claim to fail. *Vermillion v. State*, 719 N.E.2d 1201, 1208 (Ind. 1999).

*French v. State*, 778 N.E.2d 816, 824 (Ind. 2002).

[19]    Moreover, counsel is given wide discretion in determining strategy and tactics, and therefore courts will accord these decisions deference. *Timberlake v. State*, 753 N.E.2d 591, 603 (Ind. 2001). "A strong presumption arises that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* "Whether a lawyer performed reasonably under the circumstances is determined by examining the whole of the lawyer's work on a case." *Oliver v. State*, 843 N.E.2d 581, 591 (Ind. Ct. App. 2006), *trans. denied*.

[20]  Brown notes that Dr. Ross found, *inter alia*, that the results of the Rorschach test suggested the possibility of distorted thinking when under moments of high stress and emotional overload and that Brown's anger at his daughter became so intense that his hitting of her may have been more of a reflexive response than one that was well thought out. Brown argues that Swanson was ineffective for failing to argue at sentencing that Brown was under the influence of extreme mental or emotional disturbance when the murder was committed and that Brown's capacity to appreciate the criminality of his conduct or to conform that conduct to the requirements of law was substantially impaired as a result of mental disease or defect.

[21]  For several reasons, we conclude that Swanson's performance was not deficient. First, further focus on the Report was unnecessary, as Swanson admitted it and urged the trial court to consider it. Swanson also specifically argued that Brown was suffering from "a mental instability" and that should "certainly" be considered by the trial court. June 4, 2001, Tr. p. 25. Moreover, when the Report was admitted, the trial judge stated that he had seen it and read it on several occasions. With the trial court stating its familiarity with the Report due to multiple readings, we cannot say that it was deficient performance to decline to belabor the point. *Cf. Bradford v. State*, 988 N.E.2d 1192, 1202 (Ind. Ct. App. 2013) ("His counsel could have reasonably decided that using the officer's deposition testimony to further impeach [a witness] would belabor the point and distract the jury[.]"), *trans. denied*. Indeed, Swanson's approach to Brown's sentencing appears to reflect this concern,

namely, that emphasizing the Report would not have been effective with the sentencing judge in this case. As mentioned, trial counsel is given wide discretion in determining strategy and tactics, and therefore courts will afford these decisions deference. *See Timberlake*, 753 N.E.2d 603. Brown points to nothing in the record that would cause us to question the reasonableness of Swanson's approach.

[22] Second, emphasizing the Report would almost certainly have had the effect of emphasizing those portions of the Report that undercut Brown's claim of severe mental illness or did not reflect well on Brown for other reasons. For one thing, the Report indicated that Brown was malingering or exaggerating symptoms in two of the psychological tests that he took. Moreover, the Report related that "[w]hen recounting the circumstances around his daughter's death, [Brown] evidenced no tearfulness or excessive guilt[,]" which could easily be seen as a lack of remorse. Direct Appeal Appellant's App. p. 62. The Report also recounted that Brown had had two substantiated allegations of spousal abuse made against him when he was in the Air Force. While the Report lends some support to a claim of serious mental-health issues, it also contained much information that undercut that claim and otherwise cast Brown in a negative light. In the end, we conclude that Swanson's performance was not deficient for failing to emphasize the Report in his sentencing argument.

[23] Even if Swanson's performance *had* been deficient, Brown has failed to establish that could have been prejudiced thereby. To the extent that the Report mentions "chronic emotional overload[,]" Ross defined this term as being

"overwhelmed by feelings of anxiety and pessimism." Direct Appeal Appellant's App. p. 68. Evidence that a person was anxious and pessimistic when he beat his three-year-old daughter to death would seem to be insignificant when compared with the gruesome aggravating circumstance. Further, it seems to us that "anxiety and pessimism" by itself does not meet the statutory mitigating circumstances of being under the influence of extreme mental or emotional disturbance when the murder was committed or show that Brown's capacity to appreciate the criminality of his conduct was substantially impaired by a mental disease or defect. Ind. Code § 35-50-2-9(c)(2), -9(c)(6); *see Mull v. State*, 770 N.E.2d 308, 315, 315 n.3 (Ind. 2002) (affirming the rejection of these two mitigating circumstances when the defense's psychologist diagnosed the defendant with borderline personality disorder, alcohol dependence, impulsiveness, immaturity, depression, disassociation, difficulty in decision making, impaired memory skills, disengagement, impoverishment of self-interest and law intelligence). Neither Brown's argument nor our review of the record convinces us that emphasizing a small portion of Dr. Ross's extensive report would have created a reasonable probability of a different sentence from the trial court judge.

## II.  Ineffective Assistance of Appellate Counsel

[24]  We review claims of ineffective assistance of appellate counsel using the same standard applicable to claims of trial counsel ineffectiveness. *Ben-Yisrayl v. State*, 729 N.E.2d 102, 106 (Ind. 2000). The petitioner must show that appellate counsel was deficient in his performance and that the deficiency resulted in

prejudice. *Id*. Ineffective assistance claims at the appellate level of proceedings generally fall into three basic categories: (1) denial of access to an appeal; (2) waiver of issues; and (3) failure to present issues well. *Bieghler v. State*, 690 N.E.2d 188, 193-95 (Ind. 1997).

To prevail on a waiver-of-issues claim of ineffectiveness, "'the defendant must overcome the strongest presumption of adequate assistance and judicial scrutiny is highly deferential.'" *Garrett v. State*, 992 N.E.2d 710, 724 (Ind. 2013) (quoting *Ben-Yisrayl*, 738 N.E.2d 253, 260–61 (Ind. 2000)). This is because the decision of which issues to raise "is one of the most important strategic decisions to be made by appellate counsel." *Bieghler*, 690 N.E. 2d at 193. "Accordingly, when assessing these types of ineffectiveness claims, reviewing courts should be particularly deferential to [a] decision to exclude certain issues in favor of others, unless such a decision was unquestionably unreasonable." *Id*. at 194.

We must determine "whether the unraised issues are significant and obvious from the face of the record and […] whether the unraised issues are 'clearly stronger' than the raised issues." *Garrett*, 992 N.E.2d at 724 (citing *Timberlake*, 753 N.E.2d at 605–06). If deficiency is proved, then the prejudice analysis "requires an examination of whether 'the issues which […] appellate counsel failed to raise would have been clearly more likely to result in reversal or an order for a new trial.'" *Id*. (quoting *Bieghler*, 690 N.E.2d at 194). Again, we afford significant deference to the decisions of appellate counsel regarding which claims to raise, as "the process of winnowing out weaker claims on appeal and focusing on those more likely to prevail, far from being evidence of

incompetence, is the hallmark of effective appellate advocacy." *Burger v. Kemp*, 483 U.S. 776, 784 (1987) (quoting *Smith v. Murray*, 477 U.S. 527, 536 (1986)) (quotation marks omitted).

[27]    Brown argues that his appellate counsel was ineffective for failing to argue that the trial court abused its discretion in sentencing him. This claim, however, is waived for a failure to raise it below. The post-conviction rules require that all grounds for relief must be pled in the PCR petition. Ind. Post-Conviction Rule 1(8) ("All grounds for relief available to a petitioner under this rule must be raised in his original petition."). Failing to plead a ground for relief results in waiver pursuant to the post-conviction rules and the principle that new issues may not be raised for the first time on appeal. *Id.*; *see also Canaan v. State*, 683 N.E.2d 227, 235 (Ind. 1997) (citing *Howard v. State*, 467 N.E.2d 1, 2 (Ind. 1984)) ("[C]laims not advanced until appellant's brief in an appeal from the denial of post-conviction relief are waived."). In his PCR petition, Brown contended that his appellate counsel was ineffective for (1) not arguing that trial counsel was ineffective for failing to emphasize Brown's mental-health issues at sentencing and (2) failing to challenge the process by which Brown was first resentenced to a term of years before the trial court re-imposed a sentence of life imprisonment without parole. On appeal, he claims a different basis for appellate counsel's ineffectiveness, that counsel should have raised the trial court's failure to identify any mental-health issues as a mitigating circumstance. Because this was not the ground advanced in Brown's PCR petition and decided by the post-conviction court, it is waived for appellate consideration.

[28] In any event, Brown does not even argue, much less establish, that the claim that the trial court abused its discretion in sentencing him was significant and obvious in the record, nor does he argue that this issue was clearly stronger than the prosecutorial-misconduct issue that was raised. To obtain relief on an ineffective-assistance-of-counsel claim, Brown must establish both deficient performance and prejudice, *Ben-Yisrayl*, 729 N.E.2d at 106, and, as the State points out, Brown has essentially failed to argue deficient performance. Brown has failed to establish that he received ineffective assistance of appellate counsel.

[29] We affirm the judgment of the post-conviction court.

Robb, J., and Altice, J., concur.