## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Nov 30 2020, 11:24 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Jeffrey A. Baldwin
Tyler D. Helmond
Voyles Vaiana Lukemeyer Baldwin & Webb
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Angela Sanchez
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Maurice McClung, Jr., <br> *Appellant-Defendant*, <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff*. | November 30, 2020 <br><br> Court of Appeals Case No. 20A-PC-413 <br><br> Appeal from the Grant Circuit Court <br><br> The Honorable Mark E. Spitzer, Judge <br><br> Trial Court Cause No. 27C01-1010-PC-4 |

**Brown, Judge.**

[1] Maurice McClung, Jr., appeals the denial of his petition for post-conviction relief. We affirm.

## Facts and Procedural History

[2] The relevant facts as discussed in McClung's direct appeal follow:

> On August 14, 2008, Darrell Hollins ("Hollins") was in Marion, Indiana with his friend, Matthew Dragoo ("Dragoo"), to buy Lortabs from Tina Jones ("Tina") for pain he experienced from a previous automobile accident. Tina showed Hollins some marijuana she had and told Hollins that her son, Ralph Jones ("Ralph"), could arrange for Hollins to buy some. Because Hollins had lost his job ten months earlier, he was dealing marijuana to make ends meet until he could find legitimate employment. Hollins told Tina to give Ralph his contact information and left. Tina called Ralph with Hollins's contact information, and Ralph made contact with Hollins. After several calls between the two, Hollins arranged to buy two pounds of marijuana from Ralph for $2,200. Ralph suggested that they meet at the Greentree Apartments in Marion. At around 5:00 p.m., Hollins and Dragoo drove to the Greentree Apartments. Ralph had told them where to find him in the complex and that he would be driving a black Grand Am.
>
> After arriving at the apartment complex, Hollins saw Ralph's black Grand Am backed into a parking spot and pulled in beside it. Hollins exited his car, and Dragoo remained in the car. Ralph was waiting for Hollins with another man, Joey Bolden ("Bolden"). The two approached Hollins and introduced themselves. Hollins then followed Ralph into the "far foyer on the right" side of the apartment building. Tr. at 104. Hollins entered the foyer behind Ralph with Bolden following them. As he walked in, Hollins saw McClung standing beside the stairs with Allen Horton ("Horton"). Hollins did not expect to meet anyone other than Ralph at the Greentree Apartments.

Hollins had not previously met Ralph or Bolden, but he had met McClung and Horton prior to that date. Hollins's cousin was a tattoo artist, and Hollins had previously seen the work his cousin had done on McClung, which included a panther and a grim reaper sitting on a throne. Hollins had met McClung about seven years earlier, when Hollins was sixteen years old. He had met Horton a year before encountering him in the foyer, when they lived in the same apartment complex.

Earlier in the day, Ralph, McClung, Bolden, Horton, and Cletus Luster had devised a plan to rob Hollins. They took mulch from Tina and placed it inside some plastic grocery bags. They planned to rob Hollins when he arrived to purchase the marijuana at the Greentree Apartments. When Hollins walked into the foyer, he saw a duffle bag that contained two knotted Wal-Mart plastic bags on the staircase. Hollins walked over to the duffle bag and saw that the plastic bags contained mulch. He immediately knew he was going to be robbed. As Hollins looked to his right, he saw McClung give Ralph a "look" and then saw a gun in McClung's hand. *Id.* at 109. Without saying a word, McClung began shooting Hollins from approximately two feet away. McClung shot Hollins once in the leg, twice in the stomach, once above the heart, and once in the left arm. Hollins fell back and tried to kick the door open behind him, while Ralph and Horton tried to grab him and drag him back inside. As Hollins attempted to turn and run away, McClung followed and shot him two more times. McClung shot Hollins in the lower back, and Hollins grabbed his money and threw it at McClung. Hollins fell to the ground, and McClung approached him and shot him in the upper left shoulder.

Hollins lost consciousness, and as he awoke, he saw Ralph, McClung, and Bolden picking his money up off of the ground. Hollins then jumped up and grabbed his arm because it felt as if it was "barely attached." *Id.* at 111. He tried to get to his car, but fell again. Dragoo helped Hollins into the car as McClung, Ralph, Bolden, and Horton fled. Dragoo picked up the

remaining money at Hollins's request. The next thing that Hollins remembered was speaking to the paramedic and telling her that he was shot "everywhere." *Id.* at 115.

The paramedic was the last thing that Hollins remembered seeing. As a result of the extreme blood loss from his gunshot wounds, Hollins had a stroke, which disabled his optic nerve and rendered him blind. Hollins suffered seven total gunshot wounds. Because of these wounds, his intestines and bowels had to be rerouted and his gall bladder removed. He breathed through a tracheotomy tube and had a feeding tube for six months. One of the bones in Hollins's left arm was shattered, and he had to undergo surgery to regain use of the arm. Hollins was hospitalized for four months after being shot and had continuous health problems as a result of his injuries.

Marion Police Officer Jeff Wells ("Officer Wells") responded to a dispatch of the shooting and stopped Ralph and Bolden in the black Grand Am. When they were stopped, both men had wadded-up money in their possession. McClung's forty-five caliber handgun, shirt, and hat were found in a trash barrel a short distance from the Greentree Apartments. Three bullets were left in the gun. Three bullet casings located at the crime scene matched the gun found. The magazine of the gun would hold ten rounds. Police officers located Horton the next day, and McClung eventually turned himself in to the police.

*McClung v. State*, No. 27A02-0910-CR-1012, slip op. at 2-5 (Ind. Ct. App. April 20, 2010), *trans. denied*.

[3] The State charged McClung with attempted murder and armed robbery as class A felonies and unlawful possession of a firearm by a serious violent felon as a class B felony. *Id.* at 5. A jury found him guilty of attempted murder and armed robbery as class A felonies. *Id.* at 6. In a subsequent proceeding, the

trial court found McClung guilty of unlawful possession of a firearm by a serious violent felon as a class B felony after he admitted he had the prior convictions listed in the charging information. *Id.* at 6-7. The court sentenced him to fifty years for Count I, attempted murder; fifty years for Count II, armed robbery; and twenty years for Count III, unlawful possession of a firearm by a serious violent felon. *Id.* at 7. The court ordered the sentences for Counts I and II to be served concurrently with and consecutive to the sentence for Count III for an aggregate sentence of seventy years. *Id.*

[4] On direct appeal, McClung argued that the trial court abused its discretion when it allowed evidence admitted of an occasion, prior to the instant crime, when Hollins purchased marijuana from McClung. *Id.* at 8. This Court found that McClung initiated the subject when he questioned Hollins about his deposition testimony and had invited any error and waived the issue. *Id.* McClung also argued that the trial court abused its discretion when it allowed the prosecutor to refer to photographs during closing argument that had not been admitted into evidence. *Id.* at 9. This Court held that this argument had been waived where the photographs in question were not included in the record on appeal. *Id.* at 10. He also challenged his sentence, and we affirmed.[1] *Id.* at 11-12.

---

[1] We observed that McClung argued that "his seventy-year aggregate sentence should be revised pursuant to Indiana Appellate Rule 7(B)." *McClung*, slip op. at 11. We noted that while McClung argued that his sentence was "manifestly unreasonable" under Ind. Appellate Rule 7(B), "the current version of the rule,

[5]     On October 5, 2010, McClung filed a verified petition for post-conviction relief alleging he was denied effective assistance of trial counsel and appellate counsel. On July 24, 2019, the post-conviction court held a hearing. McClung's counsel stated that McClung's trial counsel, Attorney Lee Calvin Buckley, had some health problems and was unable to travel and that the parties conducted a deposition on May 17, 2018, in lieu of his testimony at the hearing. The court admitted the deposition.

[6]     Amber Burks-Goble testified that she knew McClung for about fifteen years and picked him up at the Boys and Girls Club on August 14, 2008. When asked when she was with McClung that day, she answered: "Um, probably between five thirty and six." Transcript at 10. When later asked if she was constantly with McClung from the time she picked him up at the Boys and Girls Club until 9:00 or 9:30, she answered affirmatively. She testified that Attorney Buckley did not contact or interview her.

[7]     David Anderson testified that he was McClung's friend. When asked if he remembered seeing McClung on the day of the shooting at Greentree, he answered: "Uh, I don't remember the date, but yeah I seen him at the Boy's and Girl's Club." *Id.* at 16. When asked if that was the day of the shooting, he answered affirmatively. He testified that he was at the Boys and Girls Club "a little bit after five, maybe five ten, five fifteen" and that McClung approached

---

effective January 1, 2003, allows us to revise a sentence we find 'inappropriate' in light of the nature of the offense and the character of the offender." *Id.* at 11 n.4.

him minutes later at "[p]robably about five ten, five fifteen." *Id.* at 17. He testified that he left the Boys and Girls Club at "[m]aybe five thirty, somewhere around there, a little bit later," and that McClung was still there when he left. *Id.*

[8] McClung's mother, Michelle, testified that she picked McClung up at his house at "about four thirty" and took him to her mother's house and "dropped him off at the Boy's and Girl's Club at five o'clock that day." *Id.* at 23. She testified she was in contact with Attorney Buckley prior to trial and provided him with names and addresses of potential witnesses shortly after McClung's arrest.

[9] On January 21, 2020, in a twenty-four page order, the court denied McClung's petition.

## *Discussion*

[10] The petitioner in a post-conviction proceeding bears the burden of establishing grounds for relief by a preponderance of the evidence. *Fisher v. State*, 810 N.E.2d 674, 679 (Ind. 2004); Ind. Post-Conviction Rule 1(5). When appealing from the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. *Fisher*, 810 N.E.2d at 679. On review, we will not reverse the judgment unless the evidence as a whole unerringly and unmistakably leads to a conclusion opposite that reached by the post-conviction court. *Id.* "A post-conviction court's findings and judgment will be reversed only upon a showing of clear error—that which leaves us with a definite and firm conviction that a mistake has been made." *Id.* In this review,

we accept findings of fact unless clearly erroneous, but we accord no deference to conclusions of law. *Id.* The post-conviction court is the sole judge of the weight of the evidence and the credibility of witnesses. *Id.*

[11] To prevail on a claim of ineffective assistance of counsel a petitioner must demonstrate both that his counsel's performance was deficient and that the petitioner was prejudiced by the deficient performance. *French v. State*, 778 N.E.2d 816, 824 (Ind. 2002) (citing *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984), *reh'g denied*). A counsel's performance is deficient if it falls below an objective standard of reasonableness based on prevailing professional norms. *Id.* To meet the appropriate test for prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Perez v. State*, 748 N.E.2d 853, 854 (Ind. 2001). Failure to satisfy either prong will cause the claim to fail. *French*, 778 N.E.2d at 824. Most ineffective assistance of counsel claims can be resolved by a prejudice inquiry alone. *Id.*

[12] When considering a claim of ineffective assistance of counsel, a "strong presumption arises that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Morgan v. State*, 755 N.E.2d 1070, 1072 (Ind. 2001). "[C]ounsel's performance is presumed effective, and a defendant must offer strong and convincing evidence to overcome this presumption." *Williams v. State*, 771 N.E.2d 70, 73 (Ind. 2002). Evidence of isolated poor strategy, inexperience, or bad tactics will

not support a claim of ineffective assistance of counsel. *Clark v. State*, 668 N.E.2d 1206, 1211 (Ind. 1996), *reh'g denied*, *cert. denied*, 520 U.S. 1171, 117 S. Ct. 1438 (1997). "Reasonable strategy is not subject to judicial second guesses." *Burr v. State*, 492 N.E.2d 306, 309 (Ind. 1986). We "will not lightly speculate as to what may or may not have been an advantageous trial strategy as counsel should be given deference in choosing a trial strategy which, at the time and under the circumstances, seems best." *Whitener v. State*, 696 N.E.2d 40, 42 (Ind. 1998). In order to prevail on a claim of ineffective assistance due to the failure to object, the defendant must show a reasonable probability that the objection would have been sustained if made. *Passwater v. State*, 989 N.E.2d 766, 772 (Ind. 2013).

[13] We apply the same standard of review to claims of ineffective assistance of appellate counsel as we apply to claims of ineffective assistance of trial counsel. *Williams v. State*, 724 N.E.2d 1070, 1078 (Ind. 2000), *reh'g denied*, *cert. denied*, 531 U.S. 1128, 121 S. Ct. 886 (2001). Ineffective assistance of appellate counsel claims fall into three categories: (1) denial of access to an appeal; (2) waiver of issues; and (3) failure to present issues well. *Garrett v. State*, 992 N.E.2d 710, 724 (Ind. 2013). To show that counsel was ineffective for failing to raise an issue on appeal thus resulting in waiver for collateral review, the defendant must overcome the strongest presumption of adequate assistance, and judicial scrutiny is highly deferential. *Id.* To evaluate the performance prong when counsel waived issues upon appeal, we apply the following test: (1) whether the unraised issues are significant and obvious from the face of the record and (2)

whether the unraised issues are clearly stronger than the raised issues. *Id.* If the analysis under this test demonstrates deficient performance, then we evaluate the prejudice prong which requires an examination of whether the issues which appellate counsel failed to raise would have been clearly more likely to result in reversal or an order for a new trial. *Id.*

A. *Trial Counsel*

McClung argues his trial counsel was ineffective for failing to investigate and adequately present the alibi defense and failing to perform adequately at trial on multiple grounds. He also contends that trial counsel's errors combine to constitute ineffective assistance.

1. *Failure to Investigate and Present Alibi Defense*

Without citation to the record, McClung asserts in part that "[h]is alibi defense lost three critical witnesses": Burks-Goble, Anderson, and his mother, Michelle. Appellant's Brief at 16. He also argues that his trial counsel failed to interview a single investigator, a single alibi witness, or any of the State's witnesses other than Ralph and Hollins.

It is undisputed that effective representation requires adequate pretrial investigation and preparation. *Badelle v. State*, 754 N.E.2d 510, 538 (Ind. Ct. App. 2001), *trans. denied*. However, it is well-settled that we should resist judging an attorney's performance with the benefit of hindsight. *Id.* "When deciding a claim of ineffective assistance of counsel for failure to investigate, we

apply a great deal of deference to counsel's judgments." *Boesch v. State*, 778 N.E.2d 1276, 1283 (Ind. 2002), *reh'g denied*. With the benefit of hindsight, a defendant can always point to some rock left unturned to argue counsel should have investigated further. *Ritchie v. State*, 875 N.E.2d 706, 719 (Ind. 2007), *reh'g denied*. The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that it deprived the defendant of a fair trial. *Id.* (citing *Strickland*, 466 U.S. at 686, 104 S. Ct. 2052). Generally, "[c]ounsel's failure to interview or depose State's witnesses does not, standing alone, show deficient performance." *Williams*, 771 N.E.2d at 74. "The question is what additional information may have been gained from further investigation and how the absence of that information prejudiced his case." *Id.*

[17] In his argument, McClung does not assert what additional information may have been gained from further investigation and how the absence of that information prejudiced his case.[2] Further, the post-conviction court found in part that Burks-Goble and Anderson were not alibi witnesses because the shooting occurred sometime before 5:00 p.m. at the Greentree Apartments, which was a short drive from the Boys and Girls Club. The court also found that the testimony of Burks-Goble and Anderson lacked credibility. With respect to McClung's mother, the court found that, "if her testimony is to be

---

[2] Ind. Appellate Rule 46(a)(8) provides that each contention in the argument section "must be supported by citations to the authorities, statutes, and the Appendix or parts of the Record on Appeal relied on, in accordance with Rule 22."

believed, McClung was with *her* at the time of the shooting. However, her name was not listed on the Notice of Alibi as a witness, although she and Buckley both testified she was a primary source of the names of potential witnesses provided to Buckley." Appellant's Appendix Volume II at 83. The court also found that her testimony was lacking in credibility. We cannot say that McClung has demonstrated reversal is warranted on this basis.

### 2. *Hollins's Deposition*

[18] With respect to his assertion that his trial counsel failed to object to inadmissible evidence, McClung does not say which evidence was inadmissible. Rather, he argues his counsel "not only failed to object to inadmissible evidence, he initiated the introduction of the evidence himself." Appellant's Brief at 17 (citing Trial Transcript at 138). He also asserts that "[t]his was deficient performance to introduce otherwise inadmissible Rule 404(b) evidence." *Id.* at 18. He contends that his trial counsel sought no limiting instruction and that trial counsel acknowledged there was no strategic reason to fail to do so.

[19] To the extent McClung cites page 138 of the trial transcript, which contains a reference by trial counsel to Hollins's deposition, we note that Hollins had already identified McClung at trial as the person who shot him. During recross-examination, Hollins testified about his prior interactions with McClung. McClung's counsel asked: "And that's the only time you've ever had any dealings with [McClung]?" Trial Transcript Volume I at 137-138. Hollins

answered: "That I can remember. Yes." *Id.* at 138. The following exchange then occurred:

> Q  Just want to refer you back to that deposition that you gave on the 26th day of June, 2009. On page fifteen you were asked questions about taking . . . smoking marijuana and taking pills and that kinda stuff. Do you remember that question?
>
> A  Not really. You'll have to refresh me.
>
> Q  Do you remember being asked a question on page fourteen of that deposition, at line twenty. How old were you on that date of the shooting in August of '08. Answer, how old was I. Question, yeah. Answer, twenty-three. Question, okay, had . . . now, had from sixteen to twenty-three, have you bought marijuana or any pills or any kind or anything from him during that or other than the one time you mentioned. When I was sixteen? It wasn't like two pounds or nothing. It was just some little, some for me. Where. Answer, because I smoked back then. Question, where did that. Answer, it. Question, I'm sorry, where did the transaction occur. Answer, what. When he sold you some marijuana. Answer, oh at my grandma's house across from Little Tara's, the Handy Andy. You remember being asked those questions and giving those answers?
>
> A  No.

*Id.* We note that McClung does not point to the record to show that Hollins's deposition was admitted as evidence. To the extent McClung asserts that his trial counsel sought no limiting instruction and that his trial counsel acknowledged there was no strategic reason to fail to do so, we observe that McClung cites to a portion of his trial counsel's deposition in which his trial counsel answered "[p]robably not" when asked if there was any strategic reason

not to request a limiting instruction. Exhibits Volume I at 29. However, McClung does not assert that any questioning of Hollins regarding his deposition lacked a strategic reason. Further, we observe that the post-conviction court found that McClung's trial counsel was faced with the strategic decision of whether to attack Hollins's testimony regarding identification and that this was the type of strategic decision that defense attorneys often make in the course of trial. Under the circumstances, we cannot say that the evidence as a whole unerringly and unmistakably leads to a conclusion opposite that reached by the post-conviction court.

### 3. *Photo Array*

[20] McClung next argues that his trial counsel failed to object to Marion Police Captain Kay's reference to a photo array using the term "mug photo system." Appellant's Brief at 18 (quoting Trial Transcript Volume II at 416). He does not indicate whose photo was involved in the photo array or develop an argument as to why an objection would have been sustained. The record indicates that Captain Kay testified that the photo array was generated through "the Grant County Sheriff's Department mug photo system computer" and was shown to Bolden who identified Horton. Trial Transcript Volume II at 416. McClung has not demonstrated reversible error. *See Powell v. State*, 714 N.E.2d 624, 629-630 (Ind. 1999) (observing that "[a]t most the mug shot demonstrates that [a codefendant], not the defendant, had been previously arrested" and "[t]he arrest could have been for a misdemeanor, charges may never have been filed, or charges may have been resolved short of a conviction through dismissal

or acquittal," and holding that the danger of unfair prejudice was minimal "in that the mugshot was not of the defendant himself but merely of one of his codefendants and no mention of a prior arrest or conviction was made to the jury").

### 4. *Mention of Robbery*

McClung contends a witness testified that this case was "a classic robbery" and this was later summarized for the jury as a "classic textbook robbery." Appellant's Brief at 18 (quoting Trial Transcript Volume II at 413, 448). He asserts that the witness's legal conclusion was not admissible and cites Ind. Evidence Rule 704(b) and *Williams v. State*, 43 N.E.3d 578 (Ind. 2015).

When asked if he began drawing conclusions based on his experience and walkthrough of the scene, Captain Kay answered:

> Well, initially because, you know, we knew . . . had the information and went there to purchase marijuana . . . from the first appearance of a drug deal gone bad, but as information come in and the scene started to be processed by the technicians and things of that nature and the discovery of the duffle bag with red mulch in it, it then became clear that it was just a classic robbery. That that was a prop or whatever for the lure in and it was clearly, I think I call it a classic robbery . . . a school . . . a schoolyard bully type deal. Draw the individual into a enclosed area, private area and surround them and, you know, bully them, out of the money or whatever. What it appeared.

Trial Transcript Volume II at 413. During closing argument, the prosecutor stated in part: "You also heard from . . . briefly from Captain Jay Kay and what

did he describe after his conclusions of the crime scene? Classic textbook robbery." *Id.* at 448.

[23] We note that other witnesses testified regarding the robbery. Specifically, Hollins testified that McClung shot him multiple times and McClung picked up money from the ground that he had thrown to stop McClung from shooting him. When asked if a conversation occurred in the garage regarding the plan to rob Hollins, Ralph answered affirmatively. Bolden testified that he was serving time for his part of the robbery and that he picked some money up off the ground. When asked if he became aware that "they were going to rip off this white guy, take his money," Horton answered affirmatively. *Id.* at 309.

[24] Further, the post-conviction court found that Captain Kay was describing the course of the investigation, conclusions officers made from the evidence at the scene, and the type of crime. The court also found that the statement did not implicate McClung in any way. Unlike in *Williams*, in which a detective observed a controlled buy and later testified that "a transaction for cocaine" occurred and where the Indiana Supreme Court found such a statement violated Ind. Evidence Rule 704(b),[3] 43 N.E.3d at 580, 583, Captain Kay's statement followed a question of his conclusion based merely upon his experience and a walkthrough of the scene and not whether McClung was

---

[3] Ind. Evidence Rule 704(b) provides: "Witnesses may not testify to opinions concerning intent, guilt, or innocence in a criminal case; the truth or falsity of allegations; whether a witness has testified truthfully; or legal conclusions."

guilty. With respect to the prosecutor's comment, McClung did not assert in his petition that his trial counsel was ineffective for failing to object. Further, the Indiana Supreme Court has held that "[a] prosecutor, in final arguments, can 'state and discuss the evidence and reasonable inferences derivable therefrom so long as there is no implication of personal knowledge that is independent of the evidence.'" *Hobson v. State*, 675 N.E.2d 1090, 1096 (Ind. 1996) (quoting *Kappos v. State*, 577 N.E.2d 974, 977 (Ind. Ct. App. 1991), *trans. denied*). Again, there is no basis for reversal.

5. *Cross-Examination of Bolden*

[25] McClung argues that his trial counsel failed to conduct an adequate cross-examination of Bolden, his co-defendant, because he did not question him regarding Bolden's grant of use immunity, his related criminal case, or if he could reduce his own punishment. The trial court found that there was no deal reached with the State to reduce Bolden's conviction or sentence, and McClung does not cite to the record for his assertion that Bolden provided his testimony pursuant to a grant of use immunity and has not demonstrated reversible error.

6. *Waiver of Jury Trial and Lesser-Included Instructions*

[26] McClung argues that his trial counsel "did not adequately advise [him] of the consequences of waiving jury and entering stipulations for Count III, nor did trial counsel offer lesser-included instructions or discuss the subject of offering lesser included instructions with" him. Appellant's Brief at 19. McClung does not further develop this argument, cite to the record to indicate he would not

have waived a jury trial if properly informed, or specify which lesser-included instructions his trial counsel should have offered. We cannot say that McClung has demonstrated reversal is warranted or that any alleged errors combined to constitute ineffective assistance.

B. *Appellate Counsel*

[27] McClung challenges the post-conviction court's finding that his petition merely stated that he failed to raise viable issues available to him in the direct appeal and that neither his petition nor his tendered findings of fact and conclusions of law indicated any more specific allegation. He asserts that his petition and memorandum explained that the State failed to prove all of the elements of robbery and cites to his memorandum of law in support of his petition for post-conviction relief. He argues that his appellate counsel failed to submit the photographs involved in the reference to photographs as demonstrative evidence during final argument. He also contends his appellate counsel failed to present the sentencing issue well and "made very little effort to argue about the circumstances and the nature of the offense or mitigation evidence concerning McClung's history and character." Appellant's Brief at 25.

[28] In his brief, McClung does not cite to the trial record to support his argument that the evidence was insufficient to support his robbery conviction. At the time of the offense, Ind. Code § 35-42-5-1 provided that a person who knowingly or intentionally takes property from another person or from the presence of another person by using or threatening the use of force on any

person or by putting any person in fear commits robbery, and the offense is a class A felony if it results in serious bodily injury to any person other than a defendant.[4] In light of the evidence noted and contained in the record, that appellate counsel was not ineffective for failing to raise this issue. As for McClung's argument that his appellate counsel failed to include certain photographs in the record, he does not point to the record to indicate that the photographs were introduced or admitted at the post-conviction hearing. With respect to his assertion that appellate counsel failed to present the sentencing issue well, he does not develop an argument regarding what his appellate counsel should have argued regarding the nature of the offense or his character. We cannot say McClung has demonstrated that reversal is warranted.

[29] For the foregoing reasons, we affirm the denial of McClung's petition for post-conviction relief.

[30] Affirmed.

Robb, J., and Crone, J., concur.

---

[4] Subsequently amended by Pub. L. No. 158-2013, § 450 (eff. July 1, 2014); Pub. L. No. 202-2017 § 25 (eff. July 1, 2017).